## In re MONROE.

## In re MARQUANDT

### (Circuit Court, W. D. Arkansas. February Term, 1891.)

1. HABEAS CORPUS—JURISDICTION.
   When it is alleged in a petition for a writ of *habeas corpus* that by the action of a judge of a police court of a city a person has been deprived of his liberty without due process of law, and consequently against the constitution and laws of the United States, the federal court, or judge thereof, has jurisdiction to issue a writ of *habeas corpus*.

2. SAME—DUE PROCESS OF LAW.
   A person is deprived of his liberty without due process of law when he is restrained of it by virtue of an order or judgment or commitment made or issued by a police judge of a city or town without legal authority, or beyond his jurisdiction to make or issue the same.

3. CONTEMPT—POWER TO PUNISH.
   A court of a justice of the peace, or a court of a police judge of a city or town, has, as a necessary incident to its existence, the power to punish for such contempts committed in its presence as have a tendency to produce disorder that may prevent and interrupt the orderly proceedings of such court. Such courts also have the incidental powers to punish executive officers of their courts for disobedience of, or refusal or failure to obey or execute, lawful process issued by them. Such powers belong to them because necessary to their very existence, and to enable them to perform their duties as such courts.

4. SAME—POWER OF POLICE JUDGE.
   The police judge of the city of Ft. Smith has the power, by virtue of the statutes of the state, to punish for contempt in the cases above named; but to authorize it, either under its statutory or incidental power, to punish an officer for failing or refusing to execute a process of commitment issued by it, such process must be legal.

5. PARDON—VIOLATION OF CITY ORDINANCE.
   The mayor of the city of Ft. Smith has the right, under the ordinance of the city, to pardon a person for a violation of a city ordinance when certain conditions exist. One of these is that the physical condition of a person is such that a confinement would endanger the life of such person. Under this authority to pardon, the mayor is the sole judge of the existence of the condition which gives him the right to pardon. Unless he acts corruptly, his action is final. In the absence of any showing to the contrary, the court will presume the mayor acted in good faith.

6. SAME—EFFECT.
   The pardon of the mayor destroys the offense of which a party is convicted, and the police judge cannot in such case order a person committed, and a police officer may legally disobey a commitment issued in such case by the police judge without being in contempt of the police court.

Application for *Habeas Corpus*.
*Clayton, Brizzolara & Forrester*, for petitioners.
*R. E. Jackson*, for respondent.

PARKER, J. The facts as set up in this complaint, and not denied, are that on the 11th day of November, 1890, Amanda Marquandt was brought before Judge MURPHY, as police judge of the city of Ft. Smith, Ark., and fined in the sum of $5 for misdemeanor, and costs amounting to $1.50 were assessed against her; that at the time of her conviction no commitment or process of law was issued for her, and that no formal sentence against her was entered of record at that time; that on the evening of November 11, 1890, before, as alleged in this complaint, process of commitment had been issued, Mr. Baker, mayor of the city, ordered

Amanda Marquandt released from custody on the payment of costs, and that after the $1.50 costs was paid the mayor ordered her discharged from custody upon the representation made to him by the said Amanda Marquandt that she was, and had been, in ill health, and that confinement in the city jail for the non-payment of the fine and costs would endanger the life of the aforesaid Amanda Marquandt; that on the 12th of November, 1890, Judge MURPHY of the police court handed to Mr. John Kennedy, chief of the police of Ft. Smith, a commitment for the said Amanda Marquandt; and that this commitment was returned unexecuted by the chief of police, for the reason that the said Amanda Marquandt had been discharged from custody by order of the mayor. Thereupon Judge MURPHY of the police court issued another warrant of commitment, which was directed to Mr. Robert Monroe, a police officer of the city, but Mr. Monroe refused to execute the process, and that on the 15th day of November, 1890, Judge MURPHY of the police court assessed a fine of $25 against the said Monroe for contempt of court in refusing to execute the process of said court, and issued a warrant of commitment upon the 15th day of November, 1890, committing said Robert Monroe to the city jail or prison for a period of 25 days. In the petition it is substantially alleged that the judge of the police court had no authority to commit said Monroe to jail, for the reason that he had a lawful right to refuse to execute the process put in his hands for the commitment of this woman, Mrs. Amanda Marquandt, for the reason that the mayor had pardoned the woman at that time, and that there was no longer any offense existing against her for which she could be committed, and that the process of commitment was therefore illegal, and the officer could not be punished for contempt in refusing to execute it. In the complaint it is alleged that the petitioner, Robert Monroe, is held in custody by the jailer of the city without authority of the laws of the state, and without due process of law, and that he is therefore restrained of his liberty contrary to the constitution and laws of the United States.

The very first question that meets us upon the threshold of a case where a writ is issued which may affect proceedings of the state court is, does the federal court have jurisdiction to issue a writ in behalf of the liberty of a citizen who is alleged to be illegally restrained? How far may the federal court go in its investigation of the legality of the process, which, as is alleged, is in restraint of the liberty of a citizen of the state, or of the United States? There seems to be a misconception in the public mind as to the power of the federal court in this regard, and it is a mystery in my mind how that misconception can exist in the face of the constitution and laws of the United States. There is no invasion of any prerogative or power of the state by the exercise of jurisdiction of this kind, because there is no prerogative that belongs to any state, nor is there any power or jurisdiction in a state to deprive any citizen of liberty without due process of law. The constitution of the United States, by the first section of the fourteenth amendment, provides that: "Nor shall any state deprive any citizen of life, liberty, or property without due process of law." When a citizen is deprived of any of these rights, the

power of the United States can be invoked in behalf of the citizen. The constitution of the United States, by its own terms, erects an insurmountable barrier against any state or federal authority that can be exercised to restrain the liberty of a citizen without legal warrant. It matters not whether it is done under color of state authority or national authority; it is a restraint of liberty that is unwarranted, and the authorities upon that subject are abundant, and some of them are cases very similar to this. That which is a part of a state has of course no higher power than a state. A municipal government is carved out of a state, and is a part of the state machinery. Wherever there is an inhibition against a state doing a thing, the supreme court of the United States in many cases has held that the inhibition goes against any part of the legal machinery of the state, as well as against the whole of it. In California in the case that is recognized as the *Stockton Laundry Case*, 26 Fed. Rep. 611, it was decided that a party who was held in custody for a violation of a city ordinance which is in conflict with the fourteenth amendment to the constitution is entitled to be discharged on *habeas corpus;* and in the *Laundry License Case*, 22 Fed. Rep. 701, it was held that, under the Revised Statutes of the United States, §§ 751–755, federal courts have jurisdiction of *habeas corpus* proceedings in the case of one imprisoned without due process of law under an invalid city ordinance. In a comparatively recent case decided by Judge GRESHAM (*Ex parte Perkins*, 29 Fed. Rep. 908) it is declared:

"An order or judgment of a court, acting within its jurisdiction, punishing a party or other person for contempt of its authority, cannot be reviewed or annulled by another court; but if a court having no jurisdiction over the parties or the subject-matter before it sentences a party, a witness, or any other person to imprisonment for contempt of its authority, the person thus illegally deprived of his liberty may be released by any court authorized to issue writs of *habeas corpus.*"

The court in that case refers to a great many other cases, but the doctrine is so well enunciated that it is hardly necessary for me to refer to them.

The next question is as to the power of the police court. This is a question of some little difficulty, because of the confusion of the statutes upon his power. The question is, does he have the right, in the first instance, to commit for contempt of court? This kind of contempt is called and recognized by the law of contempt as a civil contempt,—a disobedience of the process of a court, as is claimed, by an officer of that court, whom that court had a right to command to perform a certain duty. There is a great diversity among the authorities upon the powers of courts of this character. Justice of the peace courts and municipal courts have the power, as a necessary incident to their existence, to punish for certain kinds of contempt. I believe that, without any statutory authority upon the subject, magistrates' courts and municipal courts, while they are inferior courts, and not courts of record, unless made so by a declaration of the statute, (and we will come to that presently,) have an incidental power upon this subject of contempt that goes with

their very existence, and is necessary to it. That incidental power goes to the extent of giving them the right to punish for contempts committed in the face of the court, if necessary to preserve order; and especially does it go to the power to punish for disobedience upon the part of an officer of that court to the lawful order of that court. Suppose, for example, a magistrate issues an execution, and delivers it to a constable who is an officer of that court, and such constable says, right in the face of the court, "I will not serve it." If the court does not have the power to punish for contempt, it is in a pitiable condition, sitting there without any authority whatever to enforce its lawful judgment. There is a distinction between the general power to punish for contempt, and the power to punish because the punishment is necessary to the very existence of the court. It may, however, be remarked, according to my judgment, that the allusion to this incidental power of the court is not necessary in this case, as we will see presently. In a note to *Clark* v. *People*, 12 Amer. Dec. 178, the author, speaking with reference to the class of contempts I have named, says:

"But the sounder opinion is that this power of punishing contempts is possessed equally by all courts, whether of superior or inferior grade, and whether of record or not. The foundation of the power is the obvious necessity that a court should have some summary means of self-protection from insult, disorder, and disobedience of its process. And this necessity is just as strong in inferior courts as in those of higher jurisdiction. Indeed, there would seem to be even greater reason why a justice's court should be able to vindicate its dignity and the orderly progress of its business by some prompt and efficient punitive power than for a superior court to possess this authority. Courts of higher grade usually find ample protection from offensive or disrespectful conduct in the fact that those who preside there have secure shelter in the public esteem in which they are held for their integrity, learning, and ability. Their worth and character enforce respect without resorting to the coercive sanctions of the law. But it is not so with justice's courts. Their weakness and obscurity, and the ignorance and inexperience which are too often displayed there, invite insult."

Further on in the same note the author says that in an opinion in a noted case the court remarked:

"The power to punish for contempt is inherent in the nature and constitution of a court. It is a power not derived from any statute, but arising from necessity; implied because it is necessary to the exercise of all other powers. It is indispensable to the proper transaction of business. It represses disorder, violence, and excitement, and preserves the gravity, tranquility, decorum, and courtesy that are necessary to the impartial investigation of controversies. It secures respect for the law by requiring respect and obedience to those who represent its authority. Its exercise is not merely personal to the court and its dignity; it is due to the authority of law and the administration of justice."

Further on in the same note it is remarked:

"The power to punish for contempts is indispensable to the proper discharge of their duties by magistrates. Without it the magistrate would be in a pitiable condition, compelled to hold court, investigate controversies, examine witnesses, and listen to arguments, and yet powerless to secure order in his proceedings, to enforce obedience to his decisions, to repress turbu-

lence, or even to protect himself from insult. The mere power to remove disorderly persons from the court-room would be wholly inadequate to secure either the proper transaction and dispatch of business, or the respect and obedience due to the court, and necessary for the administration of justice."

Further on in the same note we find the following:

"Mr. Bishop remarks [2 Bish. Crim. Law, § 263] that the opinion 'may perhaps be well founded' that a justice's power to punish contempts is limited, as mentioned in some of the cases already referred to, to cases where the offense is committed in the magistrate's presence, while holding court. The learned author, however, does not seem entirely satisfied with the correctness of that limitation. Nor is it easy to discover any solid reason for such a limitation. Why, for instance, should not a witness be punished for contempt for disobeying a magistrate's subpoena, as in *Robb* v. *McDonald*, 29 Iowa, 330? Or why should not an attachment issue for a juror, who, after retiring from the magistrate's presence to consider the case with his fellows, separates from the rest of the jury, and departs without leave, as in *Murphy* v. *Wilson*, 46 Ind. 537? Are not acts such as these as obstructive of the business of a justice's court as any conduct of which a party could be guilty in the presence of the magistrate?"

A juror in such a case as that would be constructively in the presence of the court. It seems to me that, outside of the statute of the state upon that subject, there is an inherent power to compel obedience to the process of the court upon the part of a legal officer of that court; and, while there was something said in the discussion as to whether Mr. Kennedy, as chief of police, and the policemen as his subordinates, were officers of that court, construing the whole statute together, I think they must be held to be officers of that court. Here is one section which provides that the chief of police shall obey the orders of the mayor, and shall attend his court, etc., while it is necessary. While it is recognized that there is no mayor's court provided for by this statute, yet if you take that in connection with the other sections you must consider the chief of police and the policemen officers of the police court. This much as to his incidental power to punish for contempt.

The statute of the state makes his court a court of record. It is declared expressly by the statute to be a court of record. "Every police court shall have a seal, and shall be deemed a court of record. Said seal shall be provided by the city council, with the name of the state in the center, and the words 'Police Court' around the margin." That is the declaration of the statute as to the *status* of that court, and I am disposed to treat the court as a court having the *status* provided for by that statute. What power has a court of record in regard to punishing for contempt? The statute gives that power:

"The general assembly shall have power to regulate by law the punishments of contempts not committed in the presence or hearing of the courts, or in disobedience to process. Every court of record shall have power to punish, as for criminal contempt, persons guilty of the following acts: *First.* Disorderly, contemptuous, or insolent behavior committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings, or to impair the respect due to its authority. *Second.* Any breach of the peace, noise, or disturbance directly tending to interrupt its proceed-

ings. *Third*. Willful disobedience of any process or order lawfully issued or made by it."

There is the power to punish for contempts, given by the statute, and my judgment is, as far as the condition of this police court is concerned in regard to the punishment of contempts, it is precisely the same as any other court of record. It is made a court of record. Now, the question is, if at the time that the police judge issued this process for the commitment of Robert Monroe, he could issue a lawful process for his commitment. Under this statute, if the process was illegal—if it was unlawfully issued—he could not commit him for contempt. It seems at the time that he issued this process that the mayor had intervened, and had done what he asserts amounted to a pardon of this woman for the offense of which she was declared guilty by the police court, and the mayor claims that authority under the act of the council passed the 30th of August, 1888, which is as follows:

"Section 1. That the mayor shall hereafter have the authority to discharge any person from the city prison confined for the non-payment of a fine for the violation of an ordinance, when the physical condition of such person is such that a confinement would endanger the life of such person, or the life or health of any other person confined in such prison; or when it shall appear by affidavit that new and material evidence has been discovered since the trial, tending to show the innocence of defendant, which could not have been obtained by the defendant at the trial, or was unknown to him at the time, and when such discharge shall be recommended by the police judge.

"Sec. 2. He shall have the authority to reduce any fine imposed for a violation of an ordinance, when the police judge shall recommend such reduction.

"Sec. 3. He shall also have the power to reduce the sentence of the defendant for good conduct without the written recommendation of the police judge."

As far as the case of this woman, Amanda Marquandt, is concerned, it becomes necessary to only allude to the first section, which gives the mayor, among other things, the power to pardon when the life or health of any person confined in such prison would be endangered by such confinement, or if the confinement would endanger the life of such person confined. It is alleged in this petition that that was the ground upon which the mayor acted, and that is not denied. Of course, if the mayor has the power to pardon, the court must presume, in the absence of anything to the contrary, that he exercised that power in good faith. If that power had the effect to destroy the offense, and eliminate it from existence there was no longer any power to hold her in custody. The case of *U. S.* v. *Kein*, 13 Wall. 128, decides that a pardon blots out the offense, and removes all its penal consequences. That is the effect of a pardon. It seems to me that under this ordinance the mayor had the power to pardon upon the existence of a certain condition, and that was that the health of the party was of such a nature that the imprisonment would endanger the life of such party. That is one of the conditions. The other condition is that it would endanger the lives of other persons. That is, of course, intended to apply where the party imprisoned has a contagious or infectious disease. Who is the judge of that? Who is to exercise a discretion upon that? The power which can par-

don, as a matter of course; and, as long as that power exercises a sound discretion, although it may be a mistaken exercise of it, this or any other court cannot interfere. That is my judgment of the power of the mayor. He had the power to exercise that discretion. Although he may have exercised it unwisely, unless he did it corruptly, or for a corrupt purpose, the courts could not well go behind his act. But there is no allegation that he exercised it corruptly. It is not claimed. It is claimed, perhaps, in argument, that he exercised it in a mistaken manner; but that he exercised it honestly is conceded. Although mistakenly exercised, it is a power that he had a right to exercise, as far as this court is concerned. The exercise of the power in issuing the warrant for the commitment of Robert Monroe for contempt was obtained from the statute that gives this power to punish for contempt. This statute declares that for willful disobedience of any process or order lawfully issued or made by it every court of record shall have the power to punish, as for criminal contempt, persons guilty of such acts. If the mayor had the power to pardon, and if he had exercised that power at the time of the issuance of this process, then there was no power in the police court to lawfully issue process for the commitment of the woman, because the offense had been blotted out. All the penal consequences of that offense had been removed by the act of the mayor, and it is the conclusion of this court upon that branch of the case—*First*, that the mayor had the power to exercise the authority that he did exercise in this case; *second*, that if he did exercise it, as far as any issue in this case is concerned, the court presumes that he exercised it in good faith, and the penal consequences of that offense entirely disappeared, and there was no longer any power in the police court to hold this woman in custody for the non-payment of that fine; nor was there any longer power to compel the officer of that court to execute any process of that kind, because the process must be lawful,—he must have a lawful right to issue it.

Another point: The warrant committing Robert Monroe to jail committed him for a period of 25 days. This statute provides that courts shall have power to punish for contempt, and that punishments for contempt may be by fine or imprisonment in the jail of the county where the court may be sitting, or both, in the discretion of the court; but the fines shall in no case exceed the sum of $50, nor the imprisonment 10 days. If there was no limitation of the power of the police court, it would have the power to commit for an unlimited time, until the fine assessed was paid; but this limitation of 10 days must be considered to be a limitation upon the power of that court, as well as any other court, as far as their commitment to the jail is concerned. They can commit for that time, and no longer; and, under this limitation clause, the court holds that, if he had the power to commit at all, he could not have committed for longer than 10 days. That would be a condition that would give, in this instance, this court jurisdiction to apply the writ of *habeas corpus*, because that is the exercise of authority beyond the jurisdiction of the court, outside of the laws of the state, and consequently amounts to a restraint of liberty without due process of law, because there is an

inhibition against the exercise of the law of the state to that extent in that kind of a case. And for these reasons, while the court holds that the police court had the authority to punish for contempt, by imprisonment or fine, when committed in the presence of that court, or by disobedience to a lawful order of that court, yet it must be held that in this case it had no right to exercise this power, because the offense that the party had been found guilty of had disappeared,—had no longer an existence. The mayor had wiped it out by his action, and the court holds that under this ordinance he had a right to exercise that authority, and the order will have to go discharging Mr. Monroe from custody; and the same principle that has been enunciated will apply to the case of Mrs. Marquandt, as she has been pardoned, and the court had no longer any authority to hold her in custody, and she also is entitled to a release.