[No. 19835.   Department One.   July 31, 1926.]

STATE OF WASHINGTON *on the Relation of Lloyd B. Dysart, Appellant,* v. W. H. CAMERON, *Respondent.*[1]

[1] PROHIBITION (20)—GROUNDS FOR GRANTING—WANT OF JURISDICTION.  Prohibition lies to restrain a police judge from punishing for contempt of court where he had no jurisdiction to do so.

[2] CONTEMPT (13)—COURTS (46)—MUNICIPAL COURTS—POWER TO PUNISH FOR CONTEMPT.  Police courts have inherent power and jurisdiction to punish for contempt of court committed in the presence of the court, regardless of statutory authority conferring such power (FULLERTON, J. dissenting).

Appeal from a judgment of the superior court for Lewis county, Reynolds, J., entered January 12, 1926, dismissing an action to prohibit the imposition of a fine by a police judge for contempt of court, upon sustaining a demurrer to the complaint.  Affirmed.

*J. H. Jahnke, Grimm & Grimm, B. H. Rhodes, J. A. Kavaney, Dysart & Ellsbury, C. D. Cunningham, Floyd M. Hancock, W. W. Langhorne, A. E. Rice, C. A. Studebaker, H. E. Donohoe, Gus L. Thacker, O. A. Tucker, Hull & Murray, D. G. Abel, R. L. Ponder, W. E. Bishop, H. H. Sieler, Forney & Ponder,* for appellant.

*Delos Spaulding, W. N. Beal,* and *James A. Stimson,* for respondent.

HOLCOMB, J.—Respondent, police judge of Centralia, a city of the second class, during the trial of a case proceeding before him, summarily fined relator $25 for an alleged contempt of court committed in the presence of the court, and caused relator to be committed.  Relator is an attorney at law.  Without appealing the

[1]Reported in 248 Pac. 408.

order of contempt, he sued out a writ of prohibition to the superior court of the county, in which he alleged that respondent summarily fined him without cause, without an opportunity to be heard, and that he, as police judge, had no jurisdiction or authority to punish for contempt. He also alleged that respondent filed a false statement and finding, which was attached to his petition, as to the nature of the alleged contempt.

As to the truth or falsity of the statement and finding, that is immaterial, because of the nature of this proceeding.

In the lower court respondent moved to quash the writ, which motion was treated as a demurrer, and the court sustained it, and dismissed the proceeding. This appeal results.

[1] As to the jurisdiction of the trial court to grant a writ of prohibition in case an inferior tribunal is without jurisdiction, that has been well settled in *State ex rel. Egbert v. Superior Court,* 9 Wash. 369, 37 Pac. 489; *State ex rel. Martin v. Superior Court,* 101 Wash. 81, 172 Pac. 257, 4 A. L. R. 572; *State ex rel. Maurer v. Superior Court,* 122 Wash. 555, 211 Pac. 764. Hence, if respondent had no jurisdiction as such police judge to punish for contempt, a writ of prohibition should have been granted. If he had such jurisdiction, it should be denied.

[2] The sole question to be determined is the power or jurisdiction of a police court in such cities to punish for contempt.

Police courts were first established in the state by statute in 1890 (Laws of 1889-90, p. 172, § 92 *et seq.*). Section 94 of that act gave them power "to punish persons guilty of contempt of court," without defining what should constitute contempt of court. The legislature of 1913 (Laws of 1913, p. 303, § 9) repealed § 94

of the act of 1890. Appellant therefore asserts that the power to punish for contempt has been expressly taken away by the legislature, and has never been restored since the repeal of 1913.

Appellant also vigorously contends that there are only two existing statutes capable of being construed to grant the power to police courts to punish for contempt, to wit: Section 52 *et seq.* and § 1049 *et seq.* of Rem. Comp. Stat. being Acts of 1891 and 1869, respectively.

Section 52, Rem. Comp. Stat. (Laws of 1891, p. 91), provides that every court of justice has power to preserve and enforce order in its immediate presence, then enumerating six other powers. Section 53, Rem. Comp. Stat. [P. C. § 8565], provides "For the effectual exercise of the powers specified in the last section, the court may punish for contempt in the cases and in the manner provided by law."

Section 1049, Rem. Comp. Stat. [P. C. § 7442] (Laws of 1869, p. 167), *supra,* provides, "The following acts or omissions, in respect to a court of justice or proceedings therein, are deemed to be contempts of court:—" Here follow twelve specifications, including insolence, disorder, and others.

Section 1050, Rem. Comp. Stat. [P. C. § 7443], provides:

"Every court of justice and every judicial officer has power to punish contempt by fine or imprisonment, or both."

Appellant urges that the territory had been granted no power, and never attempted, to create police courts among the inferior courts of the territory, which is correct, and the act of 1869 never was enacted with police courts in contemplation, and therefore such law never applied to police courts.

Appellant derives from the foregoing statutory provisions the corollary that they apply exclusively to higher courts of record, to supreme and superior courts, and do not include police courts, did not apply to courts then non-existent and impossible to exist by reason of the continuing provisions of the enabling act and the constitution. In furtherance of this argument, it is shown that contempts of justices of the peace were specially treated in § 1891 *et seq.*, Rem. Comp. Stat. [P. C. § 9420], where only three matters are specified, and the penalty limited. Hence, it is insisted that there is no statute existing relating to contempts of police courts.

Appellant then contends that police courts, being of limited jurisdiction, their rights to the exercise of jurisdiction must clearly appear (*McCall v. Carr*, 125 Wash. 629, 216 Pac. 871); and that, since it clearly appears that police courts had only jurisdiction to punish for contempt as conferred by the laws of 1890, and as that jurisdiction has been repealed and abolished, there is no power in police courts to punish for contempt.

To the contrary, respondent contends that since the enabling act of Congress, providing for the admission of the territory of Washington as a state into the Union, provided for the continuance of laws in force in the territory until such time as was otherwise provided by the state, and since the Constitution, Article XXVII, § 2, provides that,—

"All laws now in force in the Territory of Washington which are not repugnant to this Constitution shall remain in force until they expire by their own limitation, or are altered or repealed by the legislature:
. . ."

that the cited Laws of 1869, p. 167, of the territory of Washington, continued and still remain in force; and

since such laws are the only laws now in force defining and regulating the punishments for contempt, they necessarily apply, *ex vi termini,* to every court of justice, as the terms thereof explicitly declare, police courts included. Respondent also contends that inferior courts and courts of limited jurisdiction have inherent power to punish for contempt committed *in facie curiae.*

Appellant has favored us with extremely engaging, able and interesting briefs, full of logic and replete with legal and literary lore on both phases of this subject. Respondent has been content to rely upon cases and texts which he insists are well reasoned, convincing, and contain the better principles for pronouncement. We find it unnecessary to enter into the elaborate, extensive and intensive discussion of the legislation upon the subject.

We have read a great many cases in which we find that on the subject of contempt of court, treatises have been written in single opinions, in several cases.

A very excellent and thorough exposition of the law of contempt is found in the decision of the supreme court of North Carolina, in *Ex parte McCown,* 139 N. C. 95, 51 S. E. 957, 2 L. R. A. (N. S.) 603.

A very interesting case also is *Clark v. People,* 12 Am. Dec. 177. That volume of American Decisions was the one in which Professor A. C. Freeman, in 1879, began his long, notable, and admirable editorial work with the American Reporter System. Some observations, made in his case notes to the above cited case, will be quoted. Although that was a case where a justice of the peace had punished one for contempt committed in the presence of the justice, and there was a statute authorizing such conviction and punishment for contempt by a justice court in Illinois, the court, in passing upon the matter, said:

"It is not pretended that the magistrate has exceeded his powers in any way, nor that the contempt was not committed in his presence. The power, however, to punish for contempt, is an incident to all courts of justice independent of statutory provisions, and the power to enforce the observance of order, punish for contumacy by fine or imprisonment, are powers which may not be dispensed with, because they are necessary to the exercise of all others. The distinction that courts of inferior jurisdiction, not having a general power to fine and imprison for contempt, are restricted to such as are committed in their presence, will not alter the rule in the present case."

Professor Freeman thus begins his case note:

"That the power to punish for contempt is inherent in the very constitution and organization of a court, and necessary, not only to the proper exercise of its important functions, but to its very existence as a court, is a doctrine so obviously sound as hardly to admit of question. Like the right of self-defense in an individual it is an original power existing independently of any statute, from the very necessity of the case (citing 2 Bishop Crim. Law. Sec. 243, and many reported cases).

After referring to the fact that, the power of inferior courts to punish contempts independently of statutes, is denied in some cases, and that by inferior courts are meant those which are not courts of record, it being universally conceded that the power is inherent in all courts which are of record, he states:

"Three different views seem to be entertained concerning the power of courts not of record to punish for contempts, where such power is not conferred by statute. In one class of cases it is held that such courts do not possess the power at all except by virtue of some statute. In another class the opinion seems to be that the power to punish for contempts *in facie curiae* is inherent in inferior as in all other courts, but that the power to punish for what may be termed extra-

curial, or out-of-door, contempts exists in courts not of record only when given by statute. In the third class of cases all courts, whether of record or not, are put upon the same footing in this respect, and are held to possess full power without the aid of any statute.''

Cases are then cited as to the different views above referred to, and the editor continues, on page 181, as follows:

''But the sounder opinion is that this power of punishing contempts is possessed equally by all courts, whether of superior or inferior grade, and whether of record or not. The foundation of the power is the obvious necessity that a court should have some summary means of self protection from insult, disorder, and disobedience of its process. And this necessity is just as strong in inferior courts as in those of higher jurisdiction. Indeed, there would seem to be even greater reason why a justice's court should be able to vindicate its dignity and the orderly progress of its business, by some prompt and efficient punitive power, than for a superior court to possess this authority.''

Later he quotes from *Cooper's* case, 32 Vt. 253, and also upon a rehearing, *ibid,* p. 258, in passing upon a contempt by one of the most eminent attorneys in that state, who had been punished by a justice of the peace. It is true, it was held by the court that a justice court in that state was a court of record. It was said:

''The power to punish for contempt is inherent in the nature and constitution of a court. It is a power not derived from any statute, but arising from necessity; implied because it is necessary to the exercise of all other powers. It is indispensible to the proper transaction of business. It represses disorder, violence, and excitement, and preserves the gravity, tranquillity, decorum and courtesy, that are necessary to the impartial investigation of controversies. It secures respect for the law, by requiring respect and obedience to those who represent its authority. Its exercise is not merely personal to the court and its dignity, it is

due to the authority of law and the administration of justice. In England this power is not confined to the superior courts. It is exercised by the courts of quarter sessions, a tribunal composed of two justices of the peace, and charged with the trial of inferior offenses: *Rex v. Clement*, 4 Barn. & Ald. 229. . . . Without it the magistrate would be in a pitiable condition, compelled to hold court, to investigate controversies, examine witnesses and listen to arguments, and yet powerless to secure order in his proceedings, to enforce obedience to his decisions, to repress turbulence, or even to protect himself from insult. The mere power to remove disorderly persons from his court room would be wholly inadequate to secure, either the proper transaction and dispatch of business, or the respect and obedience due to the court, and necessary for the administration of justice."

We commend the second opinion of the Vermont court, *supra*, written by Redfield, C. J., a profound and noted jurist of his time, for its kindly admonitions as to the respect due to even inferior courts on the part of practitioners.

The editorial notes to the *Clark* case, *supra*, were cited and quoted with approval by district judge Parker, in Arkansas, in *In re Monroe*, in 1891, 46 Fed. 52. See, also, *Ex parte Terry*, 128 U. S. 289; 6 R. C. L. 517, § 29; *Scott v. Fishblate*, 117 N. C. 265, 23 S. E. 436, 30 L. R. A. 696.

One of the very comprehensive and thorough discussions of the law of contempt is that by Walker, J., in the *McCown* case, *supra*. In that case, among others, the famous case of *Ex parte Terry*, 128 U. S. 289, which was referred to in the *McCown* case as a case where most of the authorities are collated, in which the supreme court of the United States held that certain implied powers result to courts of justice from the very nature of their constitution; and thus they possess the power to fine for contempt, imprison for

contumacy, and enforce the observance of order. It is also there said:

"Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect and decorum in their presence, and submission to their lawful mandates. The power to punish for contempts is inherent in all courts, its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts, and consequently to the due administration of justice."

The writer of the *McCown* decision then proceeds:

"The moment that courts are called into existence and vested with jurisdiction over any subject, they become invested with this power. This doctrine of law is well stated in *Clark v. People* (Ill.), *supra.*"

Rapalje on Contempts, § 1, is then quoted in the *McCown* case, as follows:

"It is conclusively settled by a long line of decisions that at common law, all courts of record have an inherent power to punish contempts committed in *facie curiae*, such power being essential to the very existence of a court as such and granted as a necessary incident in establishing a tribunal as a court."

*State v. Woodfin,* 27 N. C. 199, 42 Am. Dec. 161, states the law as follows:

"The power to commit or fine for contempt is essential to the existence of every court. Business cannot be conducted, unless the court can suppress disturbances, and the only means of doing that is by immediate punishment. A breach of the peace *in facie curiae* is a direct disturbance and a palpable contempt of the authority of the court. It is a case that does not admit of delay, and the court would be without dignity, that did not punish it promptly and without trial."

The court then concludes in the *McCown* case, as follows:

"From this doctrine so firmly established and from the reasoning of the authorities cited in its support, it must necessarily follow that, as the power to attach for a certain class of contempts is inherent in the courts and essential to their existence and the due performance of their functions, the Legislature cannot, as to them, deprive the courts of this power or unduly interfere with its exercise."

While it is true, as urged by appellant, that many of the decided cases, which we have referred to and from some of which we have quoted, involved contempts of courts of record, nevertheless, their reasoning and statements apply to all courts alike, whether of record or not. The text-writers on the subject of contempt are not wholly in accord with this statement of the law.

Rapalje, Contempts, § 4, makes the statement:

"The power to punish by commitment for contempt is a power belonging only to judges of certain courts, and does not arise from the mere exercise of judicial functions. The power, so far as it may be exercised by judicial officers, is an incident to a court, belonging alike to civil and criminal jurisdictions, but not extending, at the common law, below such as are courts of record recognized by the common law."

He then cites cases referred to by Freeman in the annotations to the *Clark* case, *supra,* as not correct in principle.

In § 6, Rapalje says:

"It may well be doubted whether, at the common law, justices of the peace have any power to punish contempts either by fine or imprisonment—except, perhaps, those committed *in facie curiae.*"

Here the alleged contempt of the police justice was *in facie curiae.*

Oswald, Contempt of Court, p. 21a, an English writer on the subject, states that there inferior courts,

in the absence of statutory authority, have no power to attach for contempt. American courts have found English cases to the contrary, apparently.

It cannot be gainsaid that police courts here are courts of justice established by statutory authority. That being true, whether the statute enacted in Laws of 1869, p. 167, or that enacted in Laws of 1890, p. 174, and subsequently repealed, were intended to apply to police courts or not, when they were constituted courts of justice and given jurisdiction over anything whatever, they were endowed with inherent power to punish for contempt committed in the face of the court. It is true that the legislature may regulate and limit the punishment for contempt, and it may be that here is a field for legislation respecting police courts. The measure of punishment in this case, however, is not an issue.

While we have great esteem for appellant, and also for the great array of learned and worthy counsel from his county and vicinity who have espoused his cause, we feel compelled to say that we must not be diverted thereby from pronouncing the law as we find it to be, and that every court of justice in this state, duly established by law, has inherent power to punish for contempts committed in the presence of the court, although police courts are possibly powerless to punish for any other contempts. There is more involved in this case than the feelings or desires of the parties. It is to be regretted, that such difficulty arose between the appellant and the police judge. To appellant, no doubt, his punishment seems harsh and unjust, and for aught we know may have been so. But it is also true that often the prominence and ability of counsel, in a given community, makes a judicial officer more sensitive to, and all the more pointed, the remarks he may make about

a court of either superior or inferior jurisdiction. But since we "live by the law we must die by the law," or in other words, suffer its penalties while enjoying its perquisites.

The order denying the writ of prohibition was correct, and it must be and is affirmed.

TOLMAN, C. J., ASKREN, and BRIDGES, JJ., concur.

FULLERTON, J. (dissenting)—The section of the state constitution prescribing the courts of the state in which the judicial power of the state shall be vested (Art. IV, § 1) reads as follows:

"The judicial power of the state shall be vested in the supreme court, superior courts, justices of the peace, and such inferior courts as the legislature may provide."

Concerning the inferior courts which the legislature may establish and provide in virtue of the foregoing grant, is this provision (Art. IV, § 12):

"The legislature shall prescribe by law the jurisdiction and powers of any of the inferior courts which may be established in pursuance of this constitution."

It will thus be seen that police courts are not of the courts which the constitution provides shall exist independent of legislative enactment, but are of the courts which the legislature may establish or provide; courts of which that body is expressly commanded to prescribe by law the jurisdiction and powers. As shown in the majority opinion, the legislature, in the first of the acts establishing police courts, gave such courts power to punish for contempt, and that, in its second act, it took this power away; or, perhaps, more accurately, did not include it in the granted powers.

It is my opinion, that, in virtue of the constitutional provisions quoted, the inferior courts the legislature

establishes have no powers not expressly granted by the act establishing them, and, if the grant does not include the power to punish for contempts, such courts do not have that power. Despite what is said in the majority opinion, I am far from persuaded that the power to punish for. contempt is a power necessary to the court's existence, or a power necessary to enable it to function as a court. Disturbances can be quelled, and contumelious behavior can be checked, without treating the acts constituting the disturbance or the contumelious behavior as independent crimes and punishing them as such. The power to punish contempts as independent crimes, when unregulated, is a power subject to grave abuse, and the very fact, that the legislature first granted the power to police courts and subsequently took it away, is to my mind conclusive evidence that it did not intend that these courts should have that power.

I think the writ should be granted.