599 P.2d 223

Michael OWEN, Assistant City Attorney, City of Tucson, Petitioner,

v.

CITY COURT OF the CITY OF TUCSON, Ann Bowen, Magistrate, City Court of the City of Tucson, Respondents.

No. 14311.

Supreme Court of Arizona, In Banc.

Aug. 3, 1979.

Rehearing Denied Sept. 11, 1979.

Frederick S. Dean, Tucson City Atty. by Thomas J. Wilson, Asst. City Atty., Tucson, for petitioner.

Wilson & Thompson by Carol Wilson, Tucson, for respondent Ann Bowen.

Ann Bowen, Tucson, in pro. per.

William W. Brashear, Tucson, in pro. per. (intervenor).

CAMERON, Chief Justice.

This is a special action originally brought in the Court of Appeals by Assistant City Attorney Michael Owen for the purpose of determining if the respondent, City Court Magistrate Ann Bowen, exceeded her authority in setting an order to show cause re contempt with respect to the petitioner. Upon motion of the Chief Judge of the Court of Appeals, Division Two, the matter was transferred to this court. Rule 19(b), Rules of Civil Appellate Procedure, 17A A.R.S. The hearing was stayed pending the outcome of this special action. We have jurisdiction pursuant to Rule 19(b), Rules of Civil Appellate Procedure, 17A A.R.S.

The facts necessary for a determination of this matter on appeal are as follows. On 12 March 1979, City Magistrate Ann Bowen was presiding over the traffic case of John Tamsen III for failure to stop at a stop sign. Tamsen, who was representing himself, had filed what he denominated as a "Motion for Information," which was a request for information regarding other tickets for failure to yield written by the ticketing officer in this case. The motion was granted. Assistant City Attorney Michael Owen then refused to produce the information and submitted to the court a written memorandum explaining why production of the information would be an undue burden on his office. After reviewing the memo-randum, Judge Bowen expressed the view that certain facts set forth in it were falsehoods, that the falsehoods were very likely deliberate, and that stating falsehoods to the court was contumacious conduct. She then set the time for a hearing on an order to show cause why Michael Owen should not be held in contempt.

The instant special action was filed to determine whether the city court has such contempt powers. We accepted jurisdiction because this is a matter of statewide concern and because there have been conflicting Superior Court rulings on the issue. We also granted Tucson Chief City Magistrate William W. Brashear permission to intervene as a real party in interest.

■ Petitioner's argument that the city courts do not have contempt powers may be divided into two parts: (1) that the city court has no inherent power of contempt; and (2) that no contempt powers are granted to the city courts by statute. In addition to whatever statutory contempt powers the court may have, see A.R.S. § 12–864 and A.R.S. § 22–423 and Rule 33 of the Rules of Criminal Procedure, 17 A.R.S., we believe that the city court has inherent contempt power.

■ Courts throughout history have exercised powers not expressly bestowed upon them but which are essential to their own survival as courts. Such powers are sometimes described as "implied," "essential," "incidental," or "necessary," but most often are described as "inherent." These powers are essential to the existence, dignity and operation of a court and are indispensible if a court is to perform the duties specifically assigned to it. Such powers are impliedly given when a court is created even though the powers may not be catalogued in the constitution or statute. *State v. Cannon*, 199 Wis. 401, 226 N.W. 385 (1929).

This court, in considering the powers of superior courts, has taken the position that courts have inherent powers which are separate and distinct from jurisdictional powers conferred by law and which come into being with the creation of a court:

"The difference between the *jurisdiction* of courts and their inherent powers is an important one. Jurisdiction in governments like ours is conferred by the provisions of the Constitution and statutes enacted in pursuance thereof. That, however, is not true with respect to the inherent powers. These inherent powers may be defined as such powers as are necessary to the ordinary and efficient exercise of jurisdiction. *Hale v. State*, 55 Ohio St. 210, 60 Am.St.Rep. 691, 45 N.E. 199, 36 L.R.A. 254. These powers do not depend upon constitutional grant or in any sense upon the legislative will, and are undefined and probably undefinable as to their exact extent. For instance, the power to maintain order; to secure the attendance of witnesses; to enforce process; the arrangement for a proper place and conveniences for the meeting of the court—all of these powers must inhere in every court, or the purpose of its creation fails, and such being the case, they need not be given expressly by the Constitution or statute, and cannot be taken away by the latter." *State v. Superior Court*, 39 Ariz. 242, 247–48, 5 P.2d 192, 194–95 (1931).

■ There is no question that the Tucson City Court had jurisdiction. It follows that it must have the power to exercise that jurisdiction and we believe that includes the power of contempt. We agree with the Washington State Supreme Court which stated in 1926:

"Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum in their presence, and submission to their lawful mandates. * * * The power to punish for contempts is inherent in all courts. Its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice." *State v. Cameron*, 140 Wash. 101, 248 P. 408, 410 (1926), quoting *Ex parte McCown*, 139 N.C. 95, 51 S.E. 957, 960 (1905).

It may be that because of the type and volume of cases as well as the fact that many, if not most, of the people who appear before the city court do so without the restraining influence of counsel that city and justice courts need the contempt power more than do the Superior Courts. In any event, city courts, no less than Superior Courts, need the power to exercise their jurisdiction effectively without disturbance or contumacious conduct on the part of those who appear before them.

"Our municipal courts are most important because they are closest to the people and under the guidance of the governing statute and the Supreme Court's rules they are coming to exercise a significant part of the judicial power with dignified effectiveness. To deny them the 'right of self-preservation,' * * * upon which rests the implied power of courts generally to punish for contempt *in facie curiae* * * * would largely nullify their status and ability to function properly as an essential part of our judicial structure." *Bd. of Health v. N. Y. Cent. R.R. Co.*, 10 N.J. 284, 90 A.2d 736, 738 (1952) (citations omitted).

We hold that the city courts have inherent contempt powers. Petitioner's prayer for relief is denied.

STRUCKMEYER, V. C. J., and HAYS and GORDON, JJ., concur.

HOLOHAN, Justice, specially concurring.

Although concurring with the result, I disagree with the rationale used by the court to reach the result.

The court insists on resting its resolution of this case on an "inherent power" theory. I am in total disagreement with that theory of resolution. The city court whose powers are being examined is a creature of statute, whether created by city charter or state statute is of no moment to this discussion. It has only those powers which were given to it by law. To use an "inherent power" theory on a statutory creation is pure fiction.

When a court is created by a constitution there is justification, on occasion, for consideration of the "inherent power" concept. Constitutional courts derive their existence and power from the basic source which creates the total system of government. Their existence may not be disturbed without a change in the constitution. It is often reasoned that such courts must have all the powers necessary to carry out their constitutional function.

Article VI § 1 of the Arizona Constitution names the only constitutional courts of this state. Any other court is created by law, and it may be terminated by law. Section 32 of Article VI of the state constitution provides that the jurisdiction, *powers* and duties of courts inferior to the superior court, and that covers the city court, are to be as provided by law.

It is inconceivable to me how the majority can conjure up inherent powers for a nonconstitutional court in the face of the specific language of the Arizona Constitution which requires that the powers of such courts be as provided by law.

My concurrence in the result is due to my conclusion that the city court has been given the power by statute to punish for contempt. A.R.S. § 12–864 provides:

"Contempts committed in the presence of the court or so near thereto as to obstruct the administration of justice, and contempts committed by failure to obey a lawful writ, process, order, judgment of the court, and all other contempts not specifically embraced within this article may be punished in conformity to the practice and usage of the common law."

It is interesting and significant that certain statutes on contempt apply only to the superior court. *See* A.R.S. §§ 12–861 and 12–862.

There is no specific reference to the superior court in A.R.S. § 12–864. In my judgment this difference in removing the specific reference to the superior court and providing the general term "court" is significant, and I believe that the statute was meant to have general application to all courts.

Based on the authority of A.R.S. § 12–864 I concur in the disposition of the case made by the majority of this court.