[Nos. 6425–5–III; 6563–4–III.  Division Three.  September 20, 1984.]

*In the Matter of the Personal Restraint of*
JAMES THURMAN HARRIS, *Petitioner.*

*James Thurman Harris,* pro se.

*Kenneth O. Eikenberry, Attorney General, Douglas D. Walsh, Assistant, Donald C. Brockett, Prosecuting Attorney,* and *Paul Smith, Deputy,* for respondent.

MUNSON, C.J.—In these consolidated personal restraint petitions, James Thurman Harris seeks relief from a Spokane County conviction of second degree statutory rape and from the minimum term of imprisonment set by the Board of Prison Terms and Paroles.

In February 1981, Mr. Harris was incarcerated at the Geiger work release facility in Spokane as a federal prisoner. On February 25, he was brought to the Spokane County Jail and held on several work release violations, one of which was the sexual assault for which he was convicted. On March 5, the prosecutor filed a complaint in district court charging Mr. Harris with second degree statutory rape. When an attempt was made to arrest Mr. Harris, it was discovered he was a federal prisoner. The prosecutor obtained a writ of habeas corpus ad prosequendum, and on March 13, Mr. Harris was formally arrested.

Mr. Harris waived his right to a speedy trial until May 26, the date set for trial, at which time he moved to dismiss on the ground he had been denied a speedy trial under CrR 3.3. The motion was denied by the trial court.

Mr. Harris appealed and his trial attorney filed a brief pursuant to *Anders v. California,* 386 U.S. 738, 744, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967). By commissioner's ruling filed July 19, 1982, Mr. Harris' appeal was dismissed as frivolous and counsel's motion to withdraw was granted. This court denied the motion to modify the commissioner's ruling, and the Supreme Court denied review. The speedy trial issue was resolved adversely to Mr. Harris.[1]

With respect to the conviction, Mr. Harris raises three

---

[1]The prosecutor contends all issues were raised and adversely decided on Mr. Harris' appeal; thus, he has not substantively responded. Our reading of the ruling dismissing the appeal does not indicate this court decided the jurisdictional question, nor does it appear to have been directly raised by Mr. Harris on appeal.

issues: (1) whether his rights were violated by his being in a state jail for 8 days without the authority of a warrant; (2) whether the State obtained proper jurisdiction over him because he had been under federal custody; and (3) whether his due process rights were violated by not having been arraigned until 19 days after his arrest.

At the time of his arrest on state charges, Mr. Harris was in custody in Spokane County Jail on the basis of the federal work release violations. He has not shown, assuming the accuracy of his allegations concerning the lack of a warrant or arraignment, that he would have been released from custody in any event. Furthermore, under a personal restraint petition, petitioner must show that the complained of error worked to his substantial disadvantage at trial. *In re Hews,* 99 Wn.2d 80, 660 P.2d 263 (1983); *In re Hagler,* 97 Wn.2d 818, 650 P.2d 1103 (1982). Mr. Harris has not shown any prejudice from what he contends was a delay in the service of a warrant or his arraignment. Nor can we find any prejudice.

With respect to the contention he was not properly brought before state authorities, it has long been held that the United States may consent to the exercise of state jurisdiction over a federal prisoner. *See Ponzi v. Fessenden,* 258 U.S. 254, 66 L. Ed. 607, 42 S. Ct. 309, 22 A.L.R. 879 (1922). And, the issuance of a writ of habeas corpus ad prosequendum, as used in this case, is the common practice for obtaining a prisoner from the federal authorities. *See Smith v. Hooey,* 393 U.S. 374, 381 n.13, 21 L. Ed. 2d 607, 89 S. Ct. 575 (1969). The decision to allow the state authorities to try a federal prisoner belongs to the federal government, and the defendant has no right to a hearing on the transfer nor can he complain about it. *Marsino v. United States,* 270 U.S. 627, 70 L. Ed. 768, 46 S. Ct. 206 (1926) (mem.), *aff'g per curiam Marsino v. Higgins,* 10 F.2d 534 (D. Mass. 1924); *Atkinson v. Hanberry,* 589 F.2d 917 (5th Cir. 1979); *Konigsberg v. Ciccone,* 417 F.2d 161 (8th Cir. 1969). Furthermore, the transfer from federal to state authorities is presumed to be authorized absent a showing

to the contrary, *Hayward v. Looney,* 246 F.2d 56 (10th Cir. 1957).

The federal marshal's return on the writ clearly establishes the federal government relinquished its custody of Mr. Harris to Spokane County authorities when the writ was served. Also, by the time judgment and sentence were filed, Mr. Harris had been mandatorily released from his federal parole. Thus, the federal government's consent to Mr. Harris being tried in state court is evident.

We also note that illegal arrest or detention does not invalidate an otherwise valid conviction even where the seizure of the defendant violates state or federal laws. *Gerstein v. Pugh,* 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854, 865 (1975); *Frisbie v. Collins,* 342 U.S. 519, 96 L. Ed. 541, 72 S. Ct. 509 (1952); *Mahon v. Justice,* 127 U.S. 700, 32 L. Ed. 283, 8 S. Ct. 1204 (1888); *Ker v. Illinois,* 119 U.S. 436, 30 L. Ed. 421, 7 S. Ct. 225 (1886); *State v. Bonds,* 98 Wn.2d 1, 14, 653 P.2d 1024 (1982); *Clifford v. Dryden,* 31 Wash. 545, 72 P. 96 (1903).

Thus, in view of the federal government's relinquishment of custody of Mr. Harris, we need not decide his challenge to the authority of the District Court to issue the writ for his prosecution. We do note, however, the district courts are granted such powers as are necessary to maintain their jurisdiction. RCW 3.20.010; *see also State ex rel. Dysart v. Cameron,* 140 Wash. 101, 248 P. 408, 54 A.L.R. 311 (1926); *State ex rel. Brockway v. Whitehead,* 88 Wash. 549, 153 P. 349 (1915).[2]

---

[2]Under appropriate circumstances, the state and federal governments may obtain prisoners from one another through use of the Interstate Agreement on Detainers Act, 18 U.S.C. app. § 2, at 545 (1982); RCW 9.100.010. *See United States v. Mauro,* 436 U.S. 340, 56 L. Ed. 2d 329, 98 S. Ct. 1834 (1978). Article 4(d) of that act also provides that an affirmative consent need not be given in order to consider the transfer approved. In most cases, the transfer is authorized by federal statute, 18 U.S.C. § 4085, which provides in part:

(a) Whenever any federal prisoner has been indicted, informed against, or convicted of a felony in a court of record of any State or the District of Columbia, the Attorney General shall, if he finds it in the public interest to do so, upon the request of the Governor or the executive authority thereof, and

Mr. Harris has not demonstrated that the federal government did not consent to his transfer to the state for the purposes of prosecution on the rape charge. In addition, prior to the date of the judgment and sentence in this case, the federal government had paroled Mr. Harris. He has failed to demonstrate prejudice on any of the issues raised with respect to the conviction.

In challenging the minimum term set by the Board of Prison Terms and Paroles, Mr. Harris contends the Board improperly enhanced his minimum term by adding various periods of time after finding the offense involved violence, forethought, physical force, major or permanent injury and "additional fondle". Mr. Harris admits receiving notice of the adverse information to be considered by the Board and that he refused to comment on it. Nonetheless, he contends the Board relied upon "impermissible criteria" in arriving at its minimum term calculation based on those findings.

The contention is frivolous. The report of proceedings and presentence investigation indicate the victim was forced to have sex with Mr. Harris, that forethought was evident, that the victim suffered some injury and that in addition to the intercourse, Mr. Harris fondled his victim. The Board was justified in calculating the minimum term as it did with respect to the offense.

Next, Mr. Harris contends the Board calculated his prior criminal history without the use of certified judgments and sentences or warrants of commitment. There is no such requirement. In *In re Acosta,* 37 Wn. App. 378, 680 P.2d 423 (1984), Division Two of this court ruled that the use of an FBI rap sheet to establish a minimum term (as opposed to a *mandatory* minimum term) was permissible and copies of certified judgments and sentences were unnecessary. Due process is satisfied by the prisoner's opportunity to contest the information to be used in setting

upon the presentation of a certified copy of such indictment, information or judgment of conviction, cause such person, prior to his release, to be transferred to a penal or correctional institution within such State or District.

the term. Mr. Harris indicates he was advised of that information, and the record confirms he received a copy but refused to comment on the information. In addition, the FBI rap sheet supports the Board's determination of Mr. Harris' criminal background.

The petitions are dismissed as frivolous.

GREEN and McINTURFF, JJ., concur.