884 P.2d 266

STATE of Arizona, ex rel. Grant WOODS, Attorney General, Plaintiff/Appellant,

v.

Marc Steven HAMEROFF; Arnold Eisenstadt; Midwest Mutual Corporation, Defendants/Appellees.

LEWIS AND ROCA, Interested Party/Appellee.

No. 2 CA–CV 94–0247.

Court of Appeals of Arizona, Division 2, Department B.

Oct. 27, 1994.

Grant Woods, Atty. Gen. by Sydney K. Davis and Nancy V. Anger, Phoenix, for plaintiff/appellant.

Lewis and Roca by Geoffrey H. Walker and Cynthia A. Coates, Phoenix, for interested party/appellee.

## OPINION

DRUKE, Chief Judge.

This appeal is taken from the trial court's ruling allowing a law firm to recover unpaid attorney's fees as part of a judgment against the defendants in a civil action brought under the Arizona Consumer Fraud Act (the Act), A.R.S. §§ 44–1521 to 44–1534. Because we agree that the trial court erred in construing the applicable statutes to include the law firm, Lewis and Roca, in the distribution as a victim of consumer fraud and because no other authority supports distribution to it of any portion of the funds seized pursuant to the Act, we reverse.

The underlying facts appear to be undisputed. From May 1991 until September 26, 1991, defendants Marc Hameroff, Arnold Eisenstadt, and Midwest Mutual Corporation operated an advance fee loan brokering business in which they represented to the public that, for a fee of $249, they could obtain loans for customers up to $25,000 regardless of the applicant's past or present credit problems. Although the defendants represented that the applications would be processed within 10 to 15 days and that there was a 90 percent approval rate, during the period from May to September 1991, only four loans were approved from 860 applications.

On September 27, 1991, the state filed a complaint against the defendants and obtained a temporary restraining order prohibiting them from engaging in the advance fee loan business or transferring any assets obtained by means alleged to violate the Act. The complaint also named Citibank as a defendant "solely due to the possible existence in its possession of proceeds of the consumer fraud" alleged in the complaint, and the restraining order prohibited the bank from transferring or distributing any funds of the defendants held by Citibank. The order

identified two specific accounts, one in Hameroff's name and one in the name of Midwest Mutual. The complaint was later amended to designate two additional accounts in Hameroff's name. Significantly, the complaint did not seek the appointment of a receiver, *see* A.R.S. § 44–1528(A)(2), but requested only injunctive relief, restitution to the victims, and the assessment of attorney's fees and civil fines. Further, the only assets sought to be recovered were the four Citibank accounts.

On September 17, 1991, Hameroff retained Lewis and Roca to represent Midwest Mutual in the investigation and gave the firm a check in the amount of $5,000. Lewis and Roca represented Midwest Mutual until November 20, 1991, when it filed an application to withdraw from further representation on the ground that Midwest Mutual had failed to pay attorney's fees incurred beyond the original retainer. The trial court granted the motion on December 10, 1991.

In March 1993, the trial court granted the state's partial motion for summary judgment, concluding that the defendants had committed wilful violations of the Act. *See* A.R.S. § 44–1531(B). The court enjoined the defendants from further violating the Act, prohibited their engaging in the advance fee loan brokerage business, ordered them to pay restitution to those consumers who had paid the $249 fee, imposed civil penalties, and awarded the state its attorney's fees and costs. A.R.S. §§ 44–1528(A), 44–1531, 44–1534.

In July, the state filed a petition for civil penalties, restitution, attorney's fees, and costs. At that point, there appeared to be approximately 100 victims seeking restitution, and the state alleged that it had incurred approximately $46,000 in attorney's fees and costs. The state also sought civil penalties of $1,000,000.[1] In responding to the petition, Lewis and Roca alleged that it had obtained a default judgment against Midwest Mutual in June 1993 for over $26,-000 in unpaid attorney's fees incurred in the consumer fraud action. Although conceding

the priority of restitution to the victims and the state's attorney's fees, Lewis and Roca argued that its judgment for attorney's fees should take priority over the civil penalty the state sought. The state opposed the motion, and a hearing was set for December 16.

At the time of the hearing, 263 victims had substantiated claims for restitution totaling $65,487. The total money available from the frozen bank accounts was approximately $104,000. The court awarded the state the requested $1,000,000 civil penalty and entered judgment against the defendants in that amount. The state was also awarded attorney's fees of $34,312.50 and costs of $3,508.50, to be paid from the Citibank accounts along with restitution to the 263 victims. The trial court concluded, however, that Lewis and Roca was also a victim and ordered that it share *pro rata* in the monies available for restitution.[2] Because the state's attorney's fees and costs were paid first, the net effect of the court's order was to reduce the victims' restitution from 100 percent to approximately 75 percent. The trial court denied the state's motion for reconsideration, and the state has appealed from the final judgment.

Although the state has raised numerous issues, we find one to be dispositive. Because we conclude that reversal is required as a result of the trial court's error in treating Lewis and Roca as a victim and that the judgment awarding restitution to Lewis and Roca can be sustained on no other basis, we do not address the remaining issues the state presents.

■ The Arizona Consumer Fraud Act is a broadly drafted remedial provision designed to eliminate unlawful practices in merchant-consumer transactions. *Madsen v. Western American Mortgage Co.*, 143 Ariz. 614, 618, 694 P.2d 1228, 1232 (App.1985). The Act prohibits as an unlawful practice

> any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with

---

1. A.R.S. § 44–1531 permits the imposition of civil penalties of not more than $10,000 per violation for wilful violations of the Act.

2. The court permitted Lewis and Roca to recover only its attorney's fees, without costs or interest, totaling approximately $23,000.

intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise....

A.R.S. § 44–1522(A). The attorney general is given broad powers to investigate any such alleged practices and to seek judicial remedies for violations of the Act. A.R.S. § 44–1528. Subsection (A) of that statute authorizes the attorney general to file an action for injunctive relief and provides that the trial court may make such orders or judgments as may be necessary to:

1. Prevent the use or employment by a person of any unlawful practice.

2. Restore to any person in interest any monies or property, real or personal, which may have been acquired by means of any practice in this article declared to be unlawful, including the appointment of a receiver.

3. Prohibit a person found to have violated this article from engaging in a specified trade or occupation.

Where it appears that the person violating the act "is about to conceal his assets or his person or leave the state," subsection (B) additionally authorizes the attorney general to apply to the court *ex parte* for the appointment of a receiver, whose powers are set forth in A.R.S. § 44–1529. That statute also provides that "[a]ny person who has suffered damages as a result of the use or employment of any unlawful practice, and submits proof to the satisfaction of the court that he has in fact been damaged, may participate with general creditors in the distribution of the assets to the extent he has sustained out-of-pocket losses."

It is apparent that, had the attorney general sought the appointment of a receiver or if the court had ordered such an appointment *sua sponte*, the receiver would have had the power, subject to court approval, to collect all the defendants' assets and distribute them for the benefit of both victims of the unlawful practices and the defendants' general creditors, including Lewis and Roca. That is not what happened in this case, however. The attorney general never requested a receiver, and the trial court never appointed one. Because it is apparent from the language of § 44–1529 that general creditors *qua* general creditors may participate in proceedings under the Act only when the assets of a defendant have been placed in receivership, the trial court had no authority to distribute any portion of the Citibank accounts to Lewis and Roca unless it qualified under § 44–1528(A)(2) as a "person in interest [whose] monies or property ... have been acquired by means of any practice in this article declared to be unlawful...."

▮ The trial court did not expressly rule that Lewis and Roca met this criterion, but simply concluded that it had been "victimized" by the defendants because their retainer check had not been honored and the firm had never received any money for its services.[3] While it may be true that Lewis and Roca has been victimized by the defendants in an existential sense, by no stretch of the imagination can it be considered a victim of the defendants' unlawful practices under the Act as charged in the complaint and found in the judgment. It did not send the defendants $249 in the expectation of qualifying for a loan, nor did the defendants in any manner acquire its monies or property by means of a practice declared unlawful by the Act. § 44–1528(A)(2).[4] Accordingly, it was not entitled to participate in the distribution of funds from the Citibank accounts, and the trial court erred in including Lewis and Roca in the distribution order.

▮ Lewis and Roca defends the court's order as an exercise of its "inherent power"

---

**3.** The trial court also appeared to analogize to criminal forfeiture cases and to conclude that the distribution was appropriate because defendants in consumer fraud actions "can't get representation unless they have some funds to ... pay their attorneys...." We fail to see how that entitles retained counsel to reimbursement for services from assets wrongfully acquired by the client through fraudulent practices, particularly in light of the fact that there is no due process right to appointed counsel in civil actions under the Consumer Fraud Act. *State ex rel. Corbin v. Hovatter*, 144 Ariz. 430, 698 P.2d 225 (App.1985).

**4.** In this connection, we note that plaintiffs bringing a private cause of action under the Act may not recover unless they prove that they relied on the defendant's unlawful practice and were damaged thereby. *Peery v. Hansen*, 120 Ariz. 266, 269, 585 P.2d 574, 577 (App.1978). Lewis and Roca neither made nor proved such allegation here.

to "affect [sic] the distribution of judgment proceeds." The inherent powers of a court are those "necessary to the ordinary and efficient exercise of [the] jurisdiction" conferred by the constitution and laws of the state. *State ex rel. Andrews v. Superior Court*, 39 Ariz. 242, 247–48, 5 P.2d 192, 194–95 (1931). *See also State v. Buonafede*, 168 Ariz. 444, 814 P.2d 1381 (1991). "These powers are essential to the existence, dignity and operation of a court and are indispensable if a court is to perform the duties specifically assigned to it." *Owen v. City Court*, 123 Ariz. 267, 268, 599 P.2d 223, 224 (1979). Examples of inherent powers are the power to maintain order, to secure the attendance of witnesses, to enforce process, and to find a person in contempt. *Id.* Lewis and Roca is correct that the Act gives the trial court the power to disburse funds subject to its jurisdiction upon proper application; it may not, however, invoke its inherent powers to disburse funds other than in accordance with the statute, which is what Lewis and Roca seeks here.

The judgment is vacated, and the matter is remanded to the trial court to enter judgment as requested by the state, deleting Lewis and Roca from the distribution order.

ESPINOSA, P.J., and HATHAWAY, J., concur.