[Civil No. 2656.   Filed July 6, 1927.]

[257 Pac. 986.]

In the Matter of the Application of HOWARD C. SPEAKMAN for a Writ of Habeas Corpus. HOWARD C. SPEAKMAN, Petitioner, v. JERRY SULLIVAN, Sheriff of Maricopa County, State of Arizona, Respondent.

Messrs. Alexander B. Baker, Edw. J. Flanigan, Thos. W. Nealon, Thos. J. Croaff, Joseph W. Conway, J. B. Zaversack, Henry H. Miller, Joseph E. Morrison, Lin H. Orme, Gene S. Cunningham, Chas. A. Carson, Jr., A. T. La Prade, Hess Seaman, H. M. Van Denburgh, Joseph M. Holub and Thos. A. Flynn, for Petitioner.

Mr. Geo. T. Wilson, County Attorney, and Mr. Benton Dick, Assistant County Attorney, and Messrs. F. C. Struckmeyer, F. H. Lyman and J. L. Gust, of counsel, for Respondent.

McALISTER, J.—The petitioner, Howard C. Speakman, a practicing attorney, was adjudged guilty of contempt on June 4th in the superior court of Maricopa county, Hon. M. T. PHELPS presiding, and directed to pay a fine of $300, or in default thereof to serve a term of sixty days in the county jail. He declined to pay the fine, and obtained from this court a writ of *habeas corpus* and an order admitting to bail pending a determination of the legality of his imprisonment.

In his return the sheriff states that he holds the prisoner by virtue of an order, judgment and decree of the superior court of Maricopa county, made and entered on June 4th, 1927, a copy of which is attached to the writ, and reads as follows:

"State of Arizona
        v.
"Christ Corras,
        "Defendant.

"On this the 4th day of June, 1927, at the hour of 9:30 A. M., comes Benton Dick, deputy county attorney, present on the part of the state, the defendant being represented by his counsel, Howard Speakman, and thereupon, this having been the time heretofore set for the appearance in open court of the affiants to the affidavits of disqualifications in this cause, in accordance with an order heretofore made and entered herein that defendant's counsel, Howard Speakman, produce said affiants at the hour of 9:30 A. M. on Saturday, June 4th, 1927, in open court, and said affiants not being present in open court in person or by counsel, and evidence being produced that said Howard Speakman made no attempt to carry out the order of the court to produce said affiants in open court;

"It is the judgment of the court that you, Howard Speakman, are guilty of contempt of this court in willfully disobeying the order of the court, and that you shall be punished therefor by the payment of a fine of three hundred and no/100 ($300.00) and that you shall be committed to the Maricopa county jail until said fine is paid, not in excess of sixty (60) days from this date.

"You will be committed at this time to the custody of the sheriff."

The return alleges further that on June 2d, 1927, there were pending in the superior court of Maricopa county certain indictments against one Christ Corras, and that, for the purpose of disqualifying the Hon. M. T. PHELPS from presiding in the trial thereof, the petitioner, who had been employed to represent Corras in defending himself against the accusation therein contained, filed on that day in each of these causes the affidavits of three persons, each stating that he was a resident elector of Maricopa county, Arizona, that he knew the above-named defendant, Christ Corras, and that, on account of the bias and prejudice of the Hon. M. T. PHELPS, before whom said cause was then pending, said Corras could not have a fair and impartial trial of said cause; that it thereupon became the duty of the said M. T. PHELPS to determine whether the persons signing such affidavits were resident electors of Maricopa county, Arizona, and that for the purpose of enabling the court to ascertain this fact it made the following order on June 3d, 1927:

"It is ordered by the court requiring Howard Speakman to produce persons signing affidavits in open court on June 4th, 1927, at 9:30 A. M."

Shorthand notes of what took place the following morning, June 4th, at 9:30 A. M., when the matter was called, were made by the reporter and a transcript thereof is attached to, and made a part of,

the return. It discloses that, in reply to the court's query as to whether the affiants were in court, the petitioner replied that they were not, and that, in answer to the further question whether he had made any effort to produce them, he stated that he had not, giving as reasons therefor that he did not represent them; that he had no process by which he could compel their attendance, that the law did not provide any, that he did not know where some of the affiants who appeared in his office and executed the affidavits lived, and that the judge of the court had no further jurisdiction in the case after the affidavits disqualifying him had been filed, except to call some other judge to preside at the trial. Following this colloquy the court said:

"It is the judgment of this court that you are guilty of contempt of this court in wilfully disobeying the order of the court, and that you shall be punished therefor by the payment of a fine of $300, and that you will be committed to the Maricopa county jail until the fine is paid, not in excess of 60 days from this date. You will be committed at this time to the custody of the sheriff."

The return further alleges that the order to produce affiants was a lawful and necessary order, and that obedience to it was imposed upon petitioner by law and the canon of ethics for the practice of law controlling the relation of courts and attorneys.

The petitioner controverts certain portions of the return, excepts to the sufficiency thereof, and alleges certain facts to show the unlawfulness of his imprisonment. He denies that upon the filing of the affidavits it became the duty of the court to determine whether the persons who made them were resident electors of Maricopa county, and alleges that, at the time they were made and filed, the affiants were such resident electors, and that the only duty devolving upon the judge of said court after they were filed was

to call in some other superior judge in the state to preside at the trial. He denies further that the order to produce the affiants was a lawful order; that obedience to it was imposed upon him by law or by the canon of ethics for the practice of law controlling the relations of courts and attorneys; and that in disobeying it he was guilty of contemptuous conduct. He alleges upon the contrary that to obey the order would have caused petitioner to deprive the affiants of the rights granted them by the Constitution of Arizona and the Constitution of the United States, in that it would have resulted in the petitioner's depriving said affiants of their liberty without due process of law, in his disturbing them in their private affairs, and possibly invading their homes, and in denying them the equal protection of the law. He alleges also that the order was void and of no effect because it was an attempt on the part of the court to use the petitioner as an officer, instrument, or agent of the court to deprive the affiants of their constitutional rights by depriving them of their liberty without due process of law, and to disturb them in their private affairs, and invade their homes without authority of law.

Under the law of this state any person charged with an offense may, if he desires, have his case heard by a judge other than the one presiding in the county where the charge is pending, and, in order to do this, it is necessary that he comply with the provisions of paragraph 999, Revised Statutes of 1913, Penal Code, reading as follows:

"A criminal action may be removed from the court in which it is pending, on the application of the defendant, on the ground that a fair and impartial trial cannot be had in the county where the action is pending, and if the defendant shall make affidavit, supported by the affidavits of three resident electors of the county that he cannot have a fair and impartial trial because of the bias and prejudice of

the superior judge of the county wherein such cause is pending, the judge shall call in some other superior judge of the state to preside at such trial."

When his own affidavit, supported by the affidavits of three resident electors stating that the defendant cannot have a fair and impartial trial because of the bias and prejudice of the judge before whom the cause is pending, is filed, the judge can do nothing else in the case other than call in some other judge to preside at the trial. Such is the plain language of the statute, and such has been the holding of this court on several occasions; its first expression on the subject being in *Stephens* v. *Stephens,* 17 Ariz. 306, 152 Pac. 164, in which the following language was used:

"The affidavit in this case is in the language of the statute. The language of the statute is not exceptional; it being found in the laws of other states. So far as we have been able to discover, the courts have uniformly held, where an affidavit of bias and prejudice is in the language of the statute, the presiding judge can perform no other function in connection with the case other than to make an order that the trial be had before another judge, as provided by the statute. The truth of the affidavit filed is not what disqualifies the judge, but the affidavit itself."

*Allan* v. *Allan,* 21 Ariz. 70, 185 Pac. 539, and *Conkling* v. *Crosby,* 29 Ariz. 60, 239 Pac. 506, hold the same way. These are civil actions, it is true, but the filing of the affidavits which paragraph 999, *supra,* provides for in criminal actions has the same effect. *Bolen* v. *Quihuiz,* 26 Ariz. 350, 225 Pac. 1110. See *State ex rel. Hannebohl* v. *Superior Court,* 85 Wash. 663, 149 Pac. 16; *Blackwell* v. *State of Florida,* 76 Fla. 124, 1 A. L. R. 502, 79 South. 731; *State ex rel. Lohman* v. *District Court,* 49 Mont. 247, 141 Pac. 659; *Buchanan* v. *State,* 2 Okl. Cr. 126, 101 Pac. 295; *State* v. *Kent,* 4 N. D. 577, 27 L. R. A. 686, 62 N. W.

631; *People ex rel. Burke* v. *District Court,* 60 Colo. 1, 152 Pac. 149.

It is contended, however, in behalf of respondent, that, while the filing of proper affidavits deprives the judge of the power to do anything further in the case, except to call in some other judge, this is not true of affidavits that do not comply with the requirements of the statutes. For instance, it is said that it is the duty of the court in all cases, and especially in those in which it has reason to believe that the persons signing the affidavits are not resident electors of the county, to ascertain whether they are such in fact before calling in another judge, and that it has the power to do whatever is necessary to enable it to perform this duty. Admitting, merely for the purposes of this case, but without deciding, that this is true, the question arises whether the method adopted by the court to get them before it for examination was proper; that is, whether the order directing the petitioner to produce the affiants was a lawful one.

Regardless of what course the court could or should have pursued, it is very clear that the law did not authorize the procedure it did adopt for the simple reason that the order required the petitioner to produce in court the persons signing the affidavits, and there is no principle of law or rule of court to which he is amenable, making it his duty to perform a service of this character, even upon the direction of the court. It is evident upon its face that the order directed him to do something he could not do in case the affiants declined to appear upon his mere request, because he had in his own right no authority to bring them in at all hazards—*vi et armis,* if necessary—in violation of their constitutional rights, and the court had clothed him with no such power. No bench warrant or any other process conferring it was given him, and, if there had been, he would have been under no obligation to serve it. His duties as an officer of

the court did not require him to perform the functions of an officer elected or appointed for this purpose. While attorneys are in a sense officers of the court, and as such owe it the duty of maintaining a respectful attitude toward it, of being honest and fair in their dealings with it, and obedient to its rules and proper orders, yet this is the extent to which they are required to go. Given a literal construction, therefore, it is clear that the order was void, and imposed upon the petitioner no obligation to comply with its terms. As said by the court in *Bakeman* v. *Superior Court,* 37 Cal. App. 785, 174 Pac. 911, in referring to an order that did not recite that the petitioner had the ability to comply with its terms:

"There is an absence of any recital or finding, in the order or elsewhere, that the petitioner had the ability to comply with the order of court referred to therein. An order adjudging one guilty of contempt for failure to perform an act directed by the court is void as a basis for the imposition of punishment, unless it appears therefrom that it is within the power of such person to perform the act."

The respondent contends, however, that the order should not be given a literal construction, but interpreted as the court really meant it, that is, as requiring an honest effort on the part of the petitioner to produce the affiants. Treated in this light, though in defending a charge of contemptuous conduct based upon a failure to obey it the petitioner would probably be justified in relying upon its literal language, there were only two things he might have done. One was to procure the issuance of proper process, whatever this was, and deliver it to an officer for service upon affiants, and the other to seek them out himself or through another, and request them to appear. If it were the intention of the court that the first course should have been followed, it should have

directed its clerk to issue the process and deliver it to the sheriff or to its bailiff to take to that officer. It wanted the affiants for its own purposes, and should have put in motion the proper machinery for securing their attendance without calling upon the petitioner. They were not his clients, nor did they bear to him a relationship of any character; certainly not one that gave him any control over them, or made it his duty to demand their presence in court. The fact that they signed the affidavits of disqualification, whether in his presence or out of it, did not render them any more subject to his direction than if they had never executed them.

And, if it were meant that the second method should have been pursued, that is, that the petitioner request the affiants to appear, it seems plain that he could not have been expected to obey it except as an act of courtesy. His duties as an officer of the court did not require him to take a message of this kind from the court to the affiants any more than they required him to perform any other act which properly falls within the duties of the bailiff. If, however, the court had asked him where the affiants lived in order that its bailiff or other officer might know where to find them, and he, having the information, had declined to give it, his refusal would have constituted contemptuous conduct, unless it had appeared that what he knew was privileged, or his answer would have tended to incriminate him. His obligation to give this information, however, would not grow out of his duties as an officer of the court, but out of the fact that he is a citizen, for every citizen is required to become a witness when called upon in any proper proceedings.

This court has not heretofore had before it the question whether an attorney may be compelled to produce in court persons situated as were the affiants in this case, but it has been called upon to say

whether one representing the state may be required to call as a witness a person who was present when a murder was committed, and it held that he could not, that it was a matter wholly for him and not the court to determine what witnesses to a transaction shall be used in support of a charge against a defendant (*Halderman* v. *Territory*, 7 Ariz. 120, 60 Pac. 876), and it would seem to follow that an attorney cannot be required by virtue of his official relation to the court to do any act that would aid in producing any person to be used as a witness either by himself or someone else.

Notwithstanding the high character and learning of the judge who entered the order, it appears to us plain that it was not authorized by law, and that petitioner was within his rights in declining to obey it. It follows that his detention is illegal, and it is therefore ordered that he be discharged.

ROSS, C. J., and LOCKWOOD, J., concur.