[Civil No. 3168.  Filed November 23, 1931.]

[5 Pac. (2d) 192.]

STATE ex rel. LLOYD J. ANDREWS, County Attorney of Maricopa County, State of Arizona; LLOYD J. ANDREWS, County Attorney of Maricopa County, State of Arizona; and J. R. McFADDEN, Sheriff of Maricopa County, State of Arizona, Petitioners, v. THE SUPERIOR COURT OF THE COUNTY OF MARICOPA, STATE OF ARIZONA, and Honorable M. T. PHELPS, One of the Judges of Said Court, Respondents.

Mr. Lloyd J. Andrews, County Attorney, and Mr. Robert McMurchie, Assistant County Attorney, for Petitioners.

Mr. Paul W. Schenck, Mr. Herman Lewkowitz and Mr. J. B. Zaversack, for Respondents.

LOCKWOOD, J.—On the twentieth day of October, 1931, Lloyd J. Andrews, being then the duly elected, qualified and acting county attorney of Maricopa county, filed in the justice court of the East Phoenix precinct of said county two criminal complaints, in each of which one Winnie Ruth Judd was charged with the crime of murder. On the third day of November she was arraigned in said precinct upon the charges contained in the complaints, and the justice of the peace set the preliminary examination upon said charges to be heard before him in said precinct on November 9th. The accused was then in the custody of J. R. McFadden, the sheriff of Maricopa county, and he had some time previous to the filing of the complaint taken into his possession certain premises known as 2929 North Second Street, in the city of Phoenix, together with the furniture, fixtures and contents thereof, for the reason that it was upon these premises that the murders of which the said Judd was accused were believed to have been committed, and in the opinion of both the county attorney and the sheriff material evidence in said cases would have been destroyed or mutilated had the sheriff not so acted.

On or about the twenty-ninth day of October Paul W. Schenck, Herman Lewkowitz and J. B. Zaversack were employed by the accused as her counsel, and on

the fourth-day of November they requested the county attorney and sheriff for permission to inspect and examine the premises with a view to the preparation of her defense. The requested permission was refused, and immediately thereafter counsel filed in the superior court of Maricopa county a petition entitled "In the Matter of the State of Arizona against Winnie Ruth Judd," requesting that the court issue an order authorizing any and all of the attorneys for accused to view the premises in question at all reasonable times and hours, whereupon the court, without notice to either the sheriff or the county attorney, made the following order:

"Comes now the Petitioner Defendant by her counsel, H. Lewkowitz and J. B. Zaversack. And thereupon it is ordered that J. R. McFadden, sheriff, and/or any of his deputies or agents, and Lloyd J. Andrews, County Attorney of Maricopa County, Arizona, and/or any of his deputies, permit any or all of the attorneys for the petitioner defendant, without restriction on their part, to view and inspect the premises known as 2929 North Second Street, Phoenix, Arizona, and the premises known as 1130 East Brill Street, Apartment F, Phoenix, Arizona."

At the time the petition was filed in the superior court and at the time such order was issued, there was no proceeding whatever pending in said superior court in which the state of Arizona and Winnie Ruth Judd were parties. Immediately upon being served with such order, the county attorney and sheriff appeared for the sole purpose of moving the court to vacate and set aside the order on the ground that it was without jurisdiction to make any order whatever in the premises. The motion was by the court denied, and this petition for a writ of *certiorari* was filed.

The above facts are not in dispute, and the question before us is one of law only. The writ of *certiorari*,

of course, issues only for the purpose of testing the existence of jurisdiction, and not to determine whether existing jurisdiction was used erroneously. Section 4391, Rev. Code 1928. It is the contention of petitioners that the superior court was wholly without jurisdiction to make any order whatever in the premises. It is the position of respondents that the court had such jurisdiction for three reasons: (1) That jurisdiction to act under circumstances such as those above set forth is affirmatively conferred upon the court by the Constitution and laws of the state of Arizona; (2) that such jurisdiction exists under the inherent powers of the court to do justice, regardless of any constitutional or statutory authority; and (3) because petitioners were both officers of the superior court, and as such amenable under the circumstances set forth herein to any order of the court in regard to the matter. We will consider these contentions in their order.

The constitutional jurisdiction of the superior court is based on section 6, article 6, Constitution of Arizona. This section, so far as it could in any manner be contended to confer jurisdiction under the circumstances above described, reads as follows:

"The superior court shall have original jurisdiction . . . in all criminal cases amounting to felony . . . and for such special cases and proceedings as are not otherwise provided for. The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court. . . . "

The question of the meaning of "jurisdiction in all cases" has been discussed by the Supreme Court of the United States in the cases of *Marbury* v. *Madison*, 1 Cranch 137, 2 L. Ed. 60, and *Muskrat* v. *United States*, 219 U. S. 348, 55 L. Ed. 246, 31 Sup. Ct. Rep. 250. In the latter case the court said:

"As we have already seen, by the express terms of the Constitution, the exercise of the judicial power is limited to 'cases' and 'controversies.' Beyond this it does not extend, and unless it is asserted in a case or controversy within the meaning of the Constitution, the power to exercise it is nowhere conferred.

"What, then, does the Constitution mean in conferring this judicial power with the right to determine 'cases' and 'controversies.' A 'case' was defined by Mr. Chief Justice Marshall as early as the leading case of *Marbury* v. *Madison,* 1 Cranch 137, 2 L. Ed. 60, to be *a suit instituted according to the regular course of judicial procedure.* And what more, if anything, is meant in the use of the term 'controversy?' That question was dealt with by Mr. Justice FIELD, at the circuit, in the case of *Re Pacific R. Commission,* 32 Fed. 241, 255. Of these terms that learned justice said:

" 'The judicial article of the Constitution mentions cases and controversies. The term "controversies," if distinguishable at all from "cases," is so in that it is less comprehensive than the latter, and includes only suits of a civil nature. *Chisholm* v. *Georgia,* 2 Dall. 431, 432, 1 L. Ed. 445, 446; 1 Tucker's Bl. Com. App. 420, 421. By cases and controversies are intended the claims of litigants brought before the courts for determination by such regular proceedings as are established by law or custom for the protection or enforcement of rights, or the prevention, redress, or punishment of wrongs. Whenever the claim of a party under the Constitution, laws, or treaties of the United States takes such a form that the judicial power is capable of acting upon it, then it has become a case. *The term implies the existence of present or possible adverse parties, whose contentions are submitted to the* court for adjudication.' " (Italics ours.)

We agree with this definition of "case," and we think in reason the term "proceeding" under our Constitution must possess the same qualities. *Janin* v. *Logan,* 209 Ky. 811, 273 S. W. 531. It cannot be contended that a "case" in the ordinarily understood

sense of the word was pending in the superior court at the time the motion upon which the order in question was based was filed, nor do we think that within the constitutional definition there was a "proceeding." It is obvious that a motion of this nature is merely a matter which, if it has any standing at all in court, is ancillary to some recognized proceeding already existing. On the face of the motion it appears that it was merely in aid of a proceeding *pending in another court*. As was said in the case of *Sheldon's Lessee* v. *Newton,* 3 Ohio St. 494: "The power to hear and determine a cause is jurisdiction; and it is *coram judice* whenever a case is presented which brings this power into action. But before this power can be affirmed to exist, it must be made to appear that the law has given the tribunal capacity to entertain the complaint against the person or thing sought to be charged or affected; that such complaint has actually been preferred; and that such person or thing has been properly brought before the tribunal, to answer the charge therein contained." We are of the opinion that so far as constitutional jurisdiction to issue the order in question is concerned, it did not exist for the reason that there was no "case" or "proceeding" in the sense in which those words are used in the Constitution, pending in the superior court in connection with which such motion could have been legally presented.

We consider next whether the order can be justified under the inherent powers of the court. The difference between the *jurisdiction* of courts and their inherent powers is an important one. Jurisdiction in governments like ours is conferred by the provisions of the Constitution and statutes enacted in pursuance thereof. That, however, is not true with respect to the inherent powers. These inherent powers may be defined as such powers as are neces-

sary to the ordinary and efficient exercise of jurisdiction. *Hale* v. *State,* 55 Ohio St. 210, 60 Am. St. Rep. 691, 36 L. R. A. 254, 45 N. E. 199. These powers do not depend upon constitutional grant or in any sense upon the legislative will, and are undefined and probably undefinable as to their exact extent. For instance, the power to maintain order; to secure the attendance of witnesses; to enforce process; the arrangement for a proper place and conveniences for the meeting of the court—all these powers must inhere in every court, or the purpose of its creation fails, and such being the case, they need not be given expressly by the Constitution or statute, and ·cannot be taken away by the latter. There is, however, one important and indeed vital limitation on these powers. They must be such as are necessary for the ordinary and efficient exercise of jurisdiction, and therefore *exist only when the jurisdiction to maintain which they are necessary, is first established.*

In considering, therefore, whether the court has the inherent power to do any particular thing, we must first ask: "Has it jurisdiction over a certain matter or question?" If that be answered in the affirmative, then, and not until then, the second question may be asked: "Is the power invoked necessary for the ordinary and efficient exercise of that jurisdiction?" Tested by this standard, it is obvious that the superior court had no inherent power to make the order in question, for it had no jurisdiction of any "case" or "proceeding" wherein either the accused or the premises in question were involved.

The third question is as to the power of the court over its own officers. It is undoubtedly true that attorneys and sheriffs are officers of the superior court in Arizona. But it is only when the act which the court seeks to control is one committed *as an officer of the court* that it has jurisdiction either to

exercise control over the act or to discipline the officer for doing or not doing it. Our attention has been called to the cases of *State* v. *Superior Court,* 30 Ariz. 332, 47 A. L. R. 401, 246 Pac. 1033, and *Howard* v. *State,* 28 Ariz. 433, 40 A. L. R. 1275, 237 Pac. 203, wherein we held the superintendent of the state prison was an officer of the court, and subject to contempt proceedings for failure to obey its orders. Those two cases, however, carefully explain that it was for failing to obey orders *which the court had jurisdiction to issue* that the superintendent was held to be in contempt. In the cases of *In re Speakman,* 32 Ariz. 307, 56 A. L. R. 169, 257 Pac. 986, and *In re Lewkowitz,* 32 Ariz. 317, 257 Pac. 989, we pointed out that although attorneys were officers of the court, they could not be compelled to do anything which was not one of the duties imposed on them as such officers.

We think that since the court had no jurisdiction of any ''case'' or ''proceeding'' in which the accused was concerned, or the right to the possession of the property involved, it had no power to order petitioners to do any act arising out of or connected with a matter pending only in the justice court at the time. If at the time the order was made there had been actually pending in the superior court some case or proceeding of which that court had jurisdiction, a very different situation would have arisen. The question has frequently been before the courts as to whether a defendant in a pending case may compel the state to furnish him with a list of the latter's witnesses or be given the opportunity to inspect articles to be used in evidence. It has been held that in the absence of some special reason why the request should be granted, it is not error for the court to refuse such request. *Padgett* v. *State,* 64 Fla. 389, Ann. Cas. 1914B 897, 59 South. 946; *Newton* v. *State,* 21 Fla. 53; *Territory* v. *Godfrey,* 6 Dak. 46, 50

250

N. W. 481. But it is also held that where justice and a fair interpretation of the law require that such inspection be granted, it should be allowed. *State* v. *Bramhall,* 134 La. 1, 63 South. 603; *State* v. *Clark,* 124 La. 965, 50 South. 811.

We are of the opinion that such a rule is in the interest of justice, and that it is left to the sound discretion of a trial court when a proceeding is pending therein as to whether such inspection and examination should be allowed or not, and the same rule would by parity of reasoning apply to inspection of premises, as in this case. Indeed, were it not for the constitutional inhibition against such course, we should be inclined to hold that it should apply to the defendant as well. It must, however, appear before any order of the nature in question can be made that there is actually pending in the court some "case" or "proceeding" known to the law to which the order requested is ancillary.

The order of the superior court of Maricopa county is quashed.

McALISTER, C. J., and ROSS, J., concur.