UNITED STATES of America

v.

Larry DICKINSON and Gibbs Adams.

Crim. No. 71–85.

United States District Court,
M. D. Louisiana.

Oct. 10, 1972.

Gerald J. Gallinghouse, U. S. Atty., James D. Carriere, Asst. U. S. Atty., E. D. La., New Orleans, La., for the United States.

Frank W. Middleton, Jr., Frank M. Coates, Jr., Taylor, Porter, Brooks & Phillips, Baton Rouge, La., for Larry Dickinson and Gibbs Adams.

E. GORDON WEST, District Judge.

Defendants, Larry Dickinson and Gibbs Adams, were held in criminal contempt of this Court and fined the sum of $300 each. The conviction of contempt resulted from the defendants' knowingly, intentionally, and willfully violating an order of this Court. Prior to their intentional and pre-announced violation of the Court's order, they made no effort to obtain a judicial determination of the validity of the Court's order despite the fact that two or more avenues were open and available for them to do so. Following their conviction, they appealed to the Fifth Circuit Court of Appeals and that Court subsequently held that the order which had been disobeyed by the defendants was constitutionally infirm and was thus an invalid order. But in the course of their opinion the Court of Appeals, 465 F.2d 496, after recognizing the well established rule of law that as a general rule invalid as well as valid orders of Court must be obeyed unless and until judicially set aside, said:

"Of course, the rule that unconstitutional court orders must nevertheless

be obeyed until set aside pre-supposes the existence of at least three conditions: (i) the court issuing the injunction must enjoy subject matter and personal jurisdiction over the controversy; (ii) adequate and effective remedies must be available for orderly review of the challenged ruling, and (iii) the order must not require an irretrievable surrender of constitutional guarantees."

The Court then proceeded to find that all of these conditions most certainly existed in this case and concluded that:

"Under the circumstances, reporters took a chance. As civil disobedients have done before they ran a risk, the risk being magnified in this case by the law's policy which forecloses their right to assert invalidity of the order as a complete defense to a charge of criminal contempt. Having disobeyed the Court's decree, they must, as civil disobeyers, suffer the consequences for having rebelled at what they deem injustice, but in a manner not authorized by law. They may take comfort in the fact that they, as their many forerunners, have thus established an important constitutional principle—which may be all that was really at stake—but they may not now escape the inescapable legal consequence for their flagrant, intentional disregard of the mandates of a Court."

But after making this positive finding, the Court of Appeals remanded the case to this Court for reconsideration and for a determination of "whether the judgment of contempt or the punishment therefor would still be deemed appropriate in light of the fact that the order disobeyed was constitutionally infirm." In view of the positive findings of the Court of Appeals, with which views I wholeheartedly agree, it would be too great a contradiction for me, on the one hand, to recognize the principle approved by the Court of Appeals that "Having disobeyed the Court's decree, they must, as civil disobeyers, suffer the

consequences for having rebelled at what they deem injustice, but in a manner not authorized by law," and at the same time hold that because the order, issued in utter good faith by this Court, was subsequently held by another Court to be constitutionally infirm, the ·defendants should *not* suffer the consequences for "having rebelled at what they deem injustice, but in a manner not authorized by law." I deem it inappropriate in this case for me to try to imitate the proverbial catfish who could talk out of both sides of his mouth and whistle all at the same time.

Furthermore, the Court of Appeals mistakenly concludes that "the conclusion of contempt was bottomed irrevocably on a mistake of law." On the contrary, the conclusion of contempt was bottomed on the very law recognized, approved, and reiterated by the Court of Appeals in this very case, i. e., that the defendants may not assert invalidity of the order as a defense to the charge of criminal contempt in this case; that having disobeyed the Court's decree they must, as civil disobeyers, suffer the consequences, and that they may not now "escape the inescapable legal consequence for their flagrant, intentional disregard of the mandates of a Court."

It was not the fact that this Court then and now believes that its order was a valid one that alone gave rise to the contempt citation. It was the fact that these defendants, rather than seek an available judicial review of the Court's order, decided instead to announce to Court personnel that they were going to violate the order and then, after violating the order, contemptuously announced to the public, at the end of their published articles, that they had published this story despite an order of Court ordering them not to do so. It was primarily this public display of utter contempt for this Court's order that prompted the contempt citation. The defendants, as noted by the Court of Appeals, may "not now escape the inescapable legal consequence for their flagrant, intentional

disregard of the mandates of a Court." Of course this Court was of the opinion that its order was a valid one. It would be difficult to conceive of a court issuing an order, knowing it to be invalid, and then having the audacity to cite a person for contempt for disobeying it. The very purpose of the law which has been cited with approval by the Court of Appeals, and under which a person must suffer the consequences for willfully and intentionally disregarding a court order, is to protect the integrity of court orders, issued in good faith, unless and until they are judicially determined to be invalid. At the time of the contempt citation, it was not the validity vel non of the Court's order that was primarily at issue. It was the intentional, willful, flagrant and contemptuous disregard of the Court's order before in any way attempting to have the order, which was obviously issued in good faith, judicially reviewed. It was upon this action, rather than a mistake of law, that the contempt citation was bottomed.

For these reasons, the conviction of the defendants for criminal contempt of Court, and the fines heretofore imposed, must remain unchanged.