601 P.2d 301

**STATE of Arizona, Appellee,**

v.

**Cesar E. CHAVEZ and Helen F. Chavez, Appellants.**

**No. 1 CA–CR 3534.**

Court of Appeals of Arizona,
Division 1,
Department C.

July 10, 1979.

Rehearing Denied Sept. 13, 1979.

Review Denied Oct. 10, 1979.

Robert K. Corbin, Atty. Gen., John A. LaSota, Jr., former Atty. Gen., by Lynn Hamilton, Asst. Atty. Gen., Phoenix, for appellee.

James Rutkowski, Salinas, Cal., for appellants.

## OPINION

WREN, Judge.

The appellants, Cesar E. Chavez and Helen F. Chavez, have challenged the constitutionality of a preliminary injunction which prohibited picketing by the United Farm Workers Union against certain melon fields in Yuma County.

This challenge arises from appellants' trial and conviction for criminal contempt under A.R.S. § 13–341(4)[1] for having deliberately violated a court order which prohibited all "massing, assembling, demonstrating or picketing" upon or near the properties of G and S Produce Company and Pete Pasquinelli Company. Appellants' contention at the hearing on the contempt charge and before this Court on appeal is that the injunction was unconstitutionally overbroad in violation of a protected First Amendment activity, peaceful picketing, since it failed to distinguish between violent and non-violent conduct. Therefore, they maintain, inasmuch as the injunction was void on its face, they had a legal right to disobey the unlawful order and could not be found guilty of criminal contempt.

The State, on the other hand, argues that appellants by failing to appeal the injunction or to seek its review by special action, are now estopped to launch a collateral attack on its validity by an appeal from their convictions on the contempt charges. We agree with this assertion by the State and therefore affirm.

The facts generally are not in dispute. Over the Memorial Day weekend, May 27 through 29, 1978, the United Farm Workers imported numerous strikers to the Yuma County cantaloupe fields and initiated a strike. On May 29, 1978, the Yuma County Superior Court issued a temporary restraining order limiting the number of strikers per acre and per laborer and prohibiting certain violent acts. On June 7, 1978, after a hearing in which appellants participated, the court issued a preliminary injunction which prohibited all picketing. On June 13, appellants violated that injunction by massing near a cantaloupe farm. Prior to the violation they had made no effort to seek relief via appeal or petition for special action.[2] Their sole defense at the contempt trial was that a citizen need not obey an invalid court order and that the prohibition against even peaceful picketing constituted an unlawful restraint of their First Amendment rights.

As a basis for issuing injunctive relief to the growers, the trial court had determined that there was no evidence of employee dissatisfaction in the melon fields and no reason for the pickets. The court further found that: the picketers were making threats against the employees working in the fields and were not attempting to engage in any peaceful communication with them; there were repeated acts of aggression by the strikers in throwing rocks and impeding traffic; and the entire situation was "enmeshed in violence". Further, the court stated that the United Farm Workers Union was in violation of Arizona's Right to Work Laws.

Appellants acknowledge that the State may legitimately enjoin non-peaceful conduct connected with a labor dispute, but contend that an order which also bans protected speech activity in its attempt to prevent unlawful conduct sweeps too broadly and is constitutionally intolerable. It is clear, they argue, that the right to peacefully picket for a lawful purpose is guaranteed under the "freedom of speech" clause of the First Amendment to the Federal Constitution. *Baldwin v. Arizona Flame Restau-*

1. § 13–341. Enumeration of methods; added penalty

    A person guilty of a contempt of court of any of the following kinds is also guilty of a crime punishable as a misdemeanor:

    \*      \*      \*      \*      \*      \*

    4. Wilful disobedience of process or an order lawfully issued by a court.

2. They did later file an appeal from the civil cases in which the injunction had been issued, but this appeal was dismissed by the Court of Appeals as being untimely.

*rant,* 82 Ariz. 385, 313 P.2d 759 (1957); *Thornhill v. State of Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).

Appellants urge that we follow the California Supreme Court decision in *In re Berry,* 68 Cal.2d 137, 65 Cal.Rptr. 273, 436 P.2d 273 (1968). In *Berry,* the superior court judge issued an injunction prohibiting all picketing and striking by a public employee union. Nevertheless, many persons continued to picket despite the order, arguing that it was unconstitutional. Approximately eighty of these persons were arrested and convicted of criminal contempt. The California Supreme Court reversed the contempt convictions on the ground that the order was unconstitutionally overbroad and, therefore, void on its face. It held that the order, because of its constitutional infirmity, was in excess of the trial court's jurisdiction and could not sustain a contempt judgment. In reaching this conclusion, the court stated:

> In this state it is clearly the law that the violation of an order in excess of the jurisdiction of the issuing court cannot produce a valid judgment of contempt
>  .   .   . .

65 Cal.Rptr. at 280, 436 P.2d at 280. (Citations omitted).

Appellants also argue that the Arizona decision of *Phoenix Newspapers, Inc. v. Superior Court,* 101 Ariz. 257, 418 P.2d 594 (1966), adopted the same policy as the California court by rejecting a contempt judgment based upon a void court order. In *Phoenix Newspapers,* the trial court had ordered a newspaper reporter, prior to the commencement of a murder trial, not to publish certain open court habeas corpus proceedings since the judge wanted to assure the defendant a fair trial. Phoenix Newspapers ignored the "gag" order and immediately published a factual account of the proceedings in both of its larger newspapers. The court then issued an order to show cause why the newspaper company should not be held in contempt.

The newspapers countered with an application for a Writ of Prohibition against the citation, urging that the court order was void in that it deprived the newspapers of the rights of free speech and freedom of the press. The Arizona Supreme Court, in granting the writ, spoke sharply to the issue of free press and open courtroom justice, and concluded that the trial court could not, in advance of publication, limit the right of the press to print the news and inform the public of that which had transpired in open court. 101 Ariz. at 260, 418 P.2d at 597. The Court reasoned as follows:

> If  .  .  .  the act complained of as contemptuous is the violation of an order, decree, or judgment, and the contemnor can show that the order, decree, or judgment of the court was without jurisdiction or void for some other reason, he may not be held in contempt. *Ferguson v. Superior Court,* 59 Ariz. 314, 320, 127 P.2d 131, 133; *In re Lewkowitz,* 32 Ariz. 317, 318, 257 P. 989; *In re Speakman,* 32 Ariz. 307, 317, 257 P. 986, 56 A.L.R. 169.

101 Ariz. at 258–259, 418 P.2d at 595–596.

Such language by our state High Court might well seem to foreclose our inquiry into the collateral attack issue here, except for the later case of *Broomfield v. Maricopa County,* 112 Ariz. 565, 544 P.2d 1080 (1975), cited by the State, and the fact that other jurisdictions have generally exempted the newspaper injunction from the "collateral bar" rule.

In *Broomfield,* the Presiding Judge of Maricopa County Superior Court had ordered the County Board of Supervisors to pay the salary of a county probation officer. The Board refused and Judge Broomfield sought relief by special action. The Board contended that the judge's order was void as a usurpation of the supervisor's authority to fix the county budget. The Arizona Supreme Court ruled:

> It is a settled principle of law that an order issued by a court with jurisdiction over the subject matter must be obeyed by the parties until that order is reversed by orderly and proper proceedings. *United States v. United Mine Workers of America,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Russell v. United States,* 86 F.2d 389 (8th Cir. 1936). This

principle applies whether the subject matter be litigation or administrative as long as the court had jurisdiction of the matter.

112 Ariz. at 568, 544 P.2d at 1083.

Clearly, in the case before us, the court had jurisdiction over both the subject matter and the parties. Except for the constitutional question appellants concede as much and admit that they knowingly violated the order against picketing. Our quandary here is thus readily perceivable, although it is to be noted that in *Phoenix Newspapers* there was a direct assault on the validity of the court order in an effort to avoid a contempt citation and the issue of a collateral attack was apparently not raised. However, any attempt at differentiation between *Phoenix Newspapers* and the language of *Broomfield* may ring somewhat hollow in light of the newspaper's deliberate violation of a court order, albeit an *ex parte* one with no opportunity to be heard and with the journalists not being a party to the court proceedings. Moreover, *Phoenix Newspapers* involved a constitutional question and *Broomfield* did not.

In support of its position, the State points to *Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967), *rhg. denied,* 389 U.S. 894, 88 S.Ct. 12, 19 L.Ed.2d 202, as being analogous on its facts and dispositive of the issue here. In this Alabama case, the City of Birmingham obtained a temporary restraining order prohibiting Dr. Martin Luther King and other civil rights demonstrators from parading and marching on Easter Sunday. King and his associates disobeyed the court order and were found guilty of criminal contempt. On appeal to the United States Supreme Court, Rev. King argued that the injunction was clearly an unconstitutional abrogation of First Amendment rights. The contemnors had sought no review of the injunction itself and had offered no explanation for this omission. They merely claimed immunity from a finding of criminal contempt based on voidness of the underlying order. The United States Supreme Court rejected that argument and affirmed the

Alabama Supreme Court's holding that it was improper to attack the injunction in a collateral proceeding. Sustaining the finding of criminal contempt, the High Court approved this principle of appellate procedure enunciated in Alabama and noted that it was consistent with the rule of law in federal courts.

The obvious conflict between *Walker v. City of Birmingham* and *In re Berry* was recognized by the California court in the *Berry* decision. It distinguished *Walker* by noting simply that California has always been *more liberal* with regard to First Amendment rights than Alabama. What *Berry* failed to note, however, was the biting denunciation at the conclusion of the majority opinion in *Walker* which had nothing to do with Alabama law or the First Amendment philosophy of the Alabama courts:

> The rule of law that Alabama followed in this case reflects a belief that in the fair administration of justice no man can be judge in his own case, however exalted his station, however righteous his motives, and irrespective of his race, color, politics or religion. *This Court cannot hold that the petitioners were constitutionally free to ignore all the procedures of the law and carry their battle to the streets. One may sympathize with the petitioners' impatient commitment to their cause. But respect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom.*

388 U.S. at 320–321, 87 S.Ct. at 1832. (Emphasis added).

Moreover, the California Supreme Court, in our opinion, erroneously relied on *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940), a case in which union members struck a factory in violation of what was held to be an unconstitutional Alabama law. The United States Supreme Court reversed the strikers' convictions. Clearly, as stated in the *Walker* decision itself, a distinction must be drawn between an unconstitutional *state law* and an uncon-

stitutional *court order.* In fact, in certain situations, intentional disobedience to a statute may be the only means of obtaining a judicial determination as to its constitutionality. *United States v. Dickinson,* 465 F.2d 496 (5th Cir. 1972), *on remand,* 349 F.Supp. 227 (M.D.La.1972), *appeal from remand,* 476 F.2d 373 (5th Cir. 1973), *cert. denied,* 414 U.S. 979, 94 S.Ct. 270, 38 L.Ed.2d 223.

As noted above, the newspaper injunction cases have been the subject of appellate review in other jurisdictions. These decisions have gone full circle in their resolution of the "collateral bar" issue, but have generally arrived at the same conclusion as Arizona in *Phoenix Newspapers.*

In *Cooper v. Rockford Newspapers, Inc.,* 50 Ill.App.3d 250, 8 Ill.Dec. 508, 365 N.E.2d 746 (1977), the Illinois appellate court expressly rejected the principle enunciated in *Berry* :

> We have found no similar expression of the doctrine of "excess of jurisdiction" as a defense to the charge of disobedience of a court order in the Illinois cases.

365 N.E.2d at 748. Then the court, although citing *Walker* with approval, distinguished it on its facts as having been issued *ex parte* and as "[involving] a prior restraint on pure speech with the accompanying heavy presumption against the constitutional validity of the order," permitted the collateral attack and reversed the contempt judgments. In *Cooper,* it was pointed out, the defendants had respectfully argued the constitutional issues to the trial court.[3]

Similarly, the Washington Supreme Court, in *State ex rel. Superior Ct. of Sno-* *homish Co. v. Sperry,* 79 Wash.2d 69, 483 P.2d 608 (1971), *cert. denied,* 404 U.S. 939, 92 S.Ct. 272, 30 L.Ed.2d 252 held that a newspaper reporter violating a court restriction on news coverage of a criminal trial could collaterally attack a contempt conviction since the restricting order was *patently invalid* on its face, and cited *In re Berry* as authority. *Walker* was again distinguished as involving an order that was not *patently invalid* as compared to the order challenged in *Sperry.* In addition the court criticized the collateral bar rule set forth in *Walker. See also, Goldblum v. National Broadcasting Corp.,* 584 F.2d 904 (9th Cir. 1978).

In contrast to both *Cooper* and *Sperry,* however, the Fifth Circuit Court of Appeals in *United States v. Dickinson,* held that where newspaper reporters had flagrantly and intentionally disregarded the court's order, the court had power to punish them for contempt, even though its order was in violation of the constitutional right of free press.

> It is clear that this principle applies even where the invalidity of the order is of constitutional proportions, as *Walker v. Birmingham, supra,* plainly holds. . . Absent a showing of "transparent invalidity" or patent frivolity surrounding the order, *it must be obeyed* until reversed by orderly review or disrobed of authority by delay or frustration in the appellate process, regardless of the ultimate determination of constitutionality, or lack thereof.[4]

465 F.2d at 509–510.

For assistance in resolving these confusing principles, we turn again to *Walker v. Birmingham* and its quote from *Howat v.*

---

3: Such reasoning escapes us. We are unable to comprehend why a weaker case for collateral review is presented when the original injunction was issued *ex parte*. In fact, the dissenting justices in *Walker* noted repeatedly that the injunction against marching had been issued on an *ex parte* basis with no opportunity to be heard.

4. It is interesting to note, however, that in spite of this strong language and the rationale of the opinion, the newspaper, as the contemnor, continued to carry into court the Sceptre of the Holy Grail. In the *last* sentence of the opinion, the Circuit Court held: "[I]t is appropriate to remand the case to the District Court for a determination of whether the judgment of contempt or punishment therefor would still be deemed appropriate in light of the fact that the order disobeyed was constitutionally infirm." 465 F.2d at 514. On remand, however, the District Court made further findings and confirmed its finding of wilful contempt and the penalty imposed. 349 F.Supp. 227 (M.D.La. 1972). The District Court was again affirmed. 476 F.2d 373 (5th Cir. 1973), *cert. denied,* 414 U.S. 979, 94 S.Ct. 270, 38 L.Ed. 223.

*State of Kansas,* 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550 (1921):

> An injunction duly [issued] . . . must be obeyed . . . however erroneous the action of the court may be . . until its decision is reversed for error by orderly review . . . and disobedience . . . is contempt of its lawful authority, to be punished.

388 U.S. at 314, 87 S.Ct. at 1828.

Approval was also given to a previous decision of the Alabama Supreme Court:

> In *Fields v. City of Fairfield,* 273 Ala. 588, 143 So.2d 177, decided just three years before the present case, the defendants, members of a "White Supremacy" organization who had disobeyed an injunction, sought to challenge the constitutional validity of a permit ordinance upon which the injunction was based. The Supreme Court of Alabama, finding that the trial court had jurisdiction, applied the same rule of law which was followed here . . . . .

388 U.S. at 319–320, 87 S.Ct. at 1831, 1832.

We endorse the precepts set forth by the United States Supreme Court in the *Walker* decision and, therefore, do not reach the question of whether the preliminary injunction before us was unlawful on its face. Nor do we here assert any opinion as to Judge Helm's conclusion that the conduct of the pickets violated Arizona's Right to Work Laws,[5] nor as to whether the picketing was so "enmeshed in violence" that it should have been enjoined in its entirety. *Cf. Milk Wagon Drivers Union v. Meadowmoor Dairies,* 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836 (1941).[6]

■ In our opinion, the concept that any person, lay or professional, may determine whether a court order is "void on its face" and thus susceptible to being ignored as unconstitutional can find no justification in the law. The application of such a principle would stand the judicial system in this country on its head.

■ Whether an injunction is "void on its face" is a legal proposition difficult to resolve. The constitutional question in the one before us can only arise extrinsically and is dependent upon evidence for its solution. *Cf. Russell v. U. S.,* 86 F.2d 389 (8th Cir. 1936). Picketing enjoys no special sanctuary making it immune from judicial action. In *Milk Wagon Drivers Union v. Meadowmoor Dairies,* the High Court warned that while peaceful picketing is the working man's means of communication, such utterance in the context of violence loses the shelter of the Constitution.

The record before us reflects that certain acts of violence did occur. The hearing on the preliminary injunction contains testimony as to threats, rock throwing, intimidation, and a general atmosphere of fear. The basic liberties of the First Amendment cannot be enhanced by denying to our courts the power to deal with such violence.

In our opinion, *In re Berry* is wholly without logic to support it. It must be the postulate of reasoned thinking in a civilized nation that judicial decrees will be faithfully carried out. When the appellants here ignored the terms of the injunction, they were placing themselves above the law and presuming to act as judges in their own case. The doors of this court were open. If they thought the injunction was too broad, they could easily have sought review by appeal or by special action as an alternate remedy to willful disobedience.

Judgment and sentence affirmed.

EUBANK, P. J., and HAIRE, J., concur.

---

5. *See Baldwin v. Arizona Flame Restaurant,* 82 Ariz. 385, 313 P.2d 759 (1957).

6. In *Milk Wagon Drivers* a preliminary injunction restraining all union conduct, violent and peaceful, was upheld because the record reflected violence on a considerable scale.